UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                           :
DANAHER CORPORATION,                                       :
                                        Plaintiff,         :
                                                           :        10 Civ. 121 (JPO)
                    -v-                                    :
                                                           :        AMENDED OPINION
THE TRAVELERS INDEMNITY COMPANY, *et* :                             AND ORDER
*al.*,                                                     :
                                        Defendants.        :
                                                           :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

        This is a dispute about insurance coverage for silica- and asbestos-related claims against

Chicago Pneumatic Tool Company ("Chicago Pneumatic").  On September 6, 2012, the Court

held that Defendants The Travelers Indemnity Company ("Travelers Indemnity") and Travelers

Casualty and Surety Company ("Travelers C&S") (collectively, "Travelers") have a duty to

defend such claims.  Travelers subsequently impleaded six insurers—AIU Insurance Company,

Century Indemnity Company, Liberty Mutual Insurance Company, Liberty Mutual Fire

Insurance Company, Trygg-Hansa Insurance Company, Ltd., and Industria Insurance Company

("Industria") (collectively, "Impleaded Insurers")—seeking a declaration of their obligations to

contribute.

        The Impleaded Insurers have moved to dismiss for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6), and Industria individually has moved to dismiss for

lack of personal jurisdiction pursuant to Rule 12(b)(2).  Danaher Corporation ("Danaher") and

Atlas Copco North America LLC ("Atlas Copco") also seek an order holding Travelers in

contempt of the September 2012 Order.  Atlas Copco individually seeks an order holding

Travelers in contempt of this Court's April 5, 2013 Order requiring Travelers to pay its

attorney's fees expended in procuring the September 2012 Order.  For the reasons that follow, Industria's 12(b)(2) motion is granted, the Impleaded Insurers' 12(b)(6) motions are granted, and the motions for contempt are denied.

## I.     Background

### A.     Factual Background[1]

Chicago Pneumatic, a tool company, sold products containing asbestos and silica for years.  In 1986, the company was acquired by Danaher.  On June 4, 1987, pursuant to a Stock Purchase Agreement ("Agreement"), Danaher conveyed 100% of the stock of Chicago Pneumatic to Atlas Copco.  Under the terms of the Agreement, Danaher retained liability for products liability losses arising from products manufactured by Chicago Pneumatic prior to June 4, 1987, and obtained rights to receive the proceeds of insurance policies covering those losses.

Between January 1, 1936 and January 1, 1970, Travelers C&S issued primary comprehensive general liability policies to Chicago Pneumatic.  Between January 1, 1970 and April 1, 1987, Travelers Indemnity issued such policies to Chicago Pneumatic and Danaher (collectively, "Travelers Policies").  North River Insurance Company ("North River") also issued various umbrella and excess insurance policies to Chicago Pneumatic between April 1, 1979 and April 1, 1982.  Nine additional insurers—not parties to the instant motions—issued various excess insurance policies to Chicago Pneumatic between 1972 and 1986 ("Additional Insurers").

Chicago Pneumatic has been and is the defendant in silica- and asbestos-related products liability claims throughout the United States ("Underlying Claims").  As a result of these claims, Danaher has incurred defense and indemnity costs, without reimbursement from other insurers, and will continue to incur such costs in the future.  Danaher has tendered timely claims for

---

[1] Unless otherwise noted, the following facts are taken from the allegations in Travelers' Amended Third-Party Complaint (Dkt. No. 123 ("Am. Compl.")) and documents incorporated by reference or integral to that submission.

coverage of the Underlying Claims under the Travelers Policies and other policies, but has not received payment.

### B.     Procedural Background

Danaher initiated this action against Travelers and North River on January 7, 2010.  (Dkt. No. 1.)  Travelers answered on February 26 and impleaded Atlas Copco.  (Dkt. No. 13.)  On January 3, 2011, Danaher filed an amended complaint naming the Additional Insurers as defendants.  (Dkt. No. 22.)  After two years of discovery, Danaher and Atlas Copco moved for summary judgment seeking a declaration that Travelers has a duty under New York law to defend the Underlying Claims.  (Dkt. No. 53.)  In a bench decision issued September 6, 2012, the Court granted the motion and held that Travelers has a "duty to defend in the past and in the future."  (Dkt. No. 98; Dkt. No. 117, Ex. D at 8.)

On November 5, 2012, Atlas Copco moved for partial summary judgment seeking an order directing Travelers to pay its attorney's fees and costs incurred to establish Travelers' duty to defend.  (Dkt. No. 107.)  On January 15, 2013, Travelers amended its third-party complaint to add the Impleaded Insurers and asserted claims for declaratory judgment, allocation, contribution, and equitable subrogation.[2]  (Dkt. No. 123 ("Am. Compl.").)  On January 31, 2013, Magistrate Judge Francis issued a report and recommendation granting Atlas Copco's motion seeking attorney's fees and costs, which the Court adopted on April 5, 2013.  *Danaher Corp. v. Travelers Indemnity Co.*, No. 10 Civ. 121 (JPO) (JCF), 2013 WL 1387017 (S.D.N.Y. Apr. 5, 2013).  On March 15, 2013 the Impleaded Insurers moved to dismiss Travelers' third-party complaint.  (Dkt. Nos. 144, 149, 152, 154 & 158.)  On April 3, Danaher and Atlas Copco filed a

---

[2] Magistrate Judge Francis granted Traveler's motion for leave to file an amended third-party complaint on January 11, 2013.  (Dkt. No. 121.)

motion for contempt against Travelers.  (Dkt. No. 163.)  On February 12, 2014, Atlas Copco

individually filed a second motion for contempt against Travelers.  (Dkt. No. 181.)

## II.      Legal Standards

### A.      12(b)(2) Motion to Dismiss

On a motion to dismiss for lack of personal jurisdiction, a federal district court may rely

solely upon the pleadings and affidavits.  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d

Cir. 1986).  To prevail, the plaintiff need only make a *prima facie* showing of personal

jurisdiction.  *Id.* (citations omitted).[3]  Prior to discovery, the plaintiff meets this burden by

pleading good faith allegations sufficient to establish jurisdiction.  *Capitol Records, LLC v.

VideoEgg, Inc.*, 611 F. Supp. 349, 356-57 (S.D.N.Y. 2009) (citation omitted).  Although the

threshold for making a *prima facie* showing is low and the plaintiff is entitled to a presumption

that its factual allegations are true, mere conclusory statements will not suffice.  *See, e.g.*, *Jazini

v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

### B.      12(b)(6) Motion to Dismiss

In considering a motion to dismiss for failure to state a claim, the court must accept all

well-pleaded factual allegations as true and draw all reasonable inferences in the pleader's favor.

*LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).

However, the court will not consider mere conclusory allegations lacking a factual basis, *Hayden

v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010), or "[t]hreadbare recitals of the elements of a

cause of action" amounting to no more than legal conclusions, *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  The only materials the Court may consider in addition to the complaint

are those which are attached, incorporated by reference, or integral to the complaint.  *Clopay

---

[3] The Court may also hold an evidentiary hearing, in which case the plaintiff must establish
personal jurisdiction by a preponderance of the evidence.  *Naughton*, 806 F.2d at 364 (citation
omitted).

*Plastic Prods. Co., Inc. v. Excelsior Packaging Group, Inc.*, No. 12 Civ. 5262 (JPO), 2013 WL
6388444, at \*2 (S.D.N.Y. Dec. 6, 2013) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.
2004)).  "A document is 'integral' to the complaint if it is 'either in plaintiffs' possession or of
which plaintiffs had knowledge and relied on in bringing suit.'"  *Id.* at \*2 (quoting *Chambers v.
Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

      The 12(b)(6) dismissal device—as well as the corollary Rule 8(a)(2) requirement that a
pleading contain a "short and plain statement of the claim showing that the pleader is entitled to
relief"—is premised upon the principle that the plaintiff must provide the court and defendants
with "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S.
at 555 (citing Rule 8(a)).  To that end, "allegations in a complaint must be complete enough to
enable a reader to understand how each defendant was personally involved in the wrongdoing
plaintiff is alleging." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 616 (S.D.N.Y. 2012).
Consequently, the plaintiff cannot rely upon "a generalized term like 'defendants' to obfuscate
each defendant's role in the alleged conduct or the legal theory of liability on which [it] is
relying." *Watkins v. Smith*, No. 12 Civ. 4635 (DLC), 2013 WL 655085, at \*9 (S.D.N.Y. Feb. 22,
2013).

      **C.**    **Motion for Contempt**

      "The power to punish for contempts is inherent in all courts.'" *Chambers v. NASCO, Inc.*,
501 U.S. 32, 44 (1991).  A court may use sanctions in civil contempt proceedings to coerce
compliance with its order or to compensate the complainant for losses sustained as a result of
non-compliance. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).
However, because a contempt order is a "potent weapon," courts should not resort to its use
"where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *King
v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (citations and quotations omitted).

"A finding of contempt is appropriate when: 1) the order allegedly violated is clear and unambiguous; 2) the proof of non-compliance is clear and convincing; and 3) the alleged violator was not reasonably diligent in attempting to comply." *Skarnulis v. Belmont*, 74 Fed. App'x 92, 94-95 (2d Cir. 2003) (citation omitted). "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (citations and quotations omitted). When the purpose of sanctions is to compel compliance with an order, the court should consider "(1) the character and magnitude of the harm threatened by continued contempt, (2) the probable effectiveness of the proposed sanction, and (3) the financial consequence of that sanction upon the contemnor." *In re Grand Jury Witnesses*, 835 F.2d 437, 443 (2d Cir. 1987) (citing *United Mine Workers*, 330 U.S. at 304). If the disobedience was willful, such that the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply, the movant may recover reasonable attorney's fees and other expenses incurred in bringing the motion. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979); *N.Y. State Nat'l Org. for Women v. Terry*, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997).

## III.    Discussion

### A.    Industria's 12(b)(2) Motion to Dismiss

A district court sitting in diversity generally "may exercise jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (Sotomayor, J.). "Accordingly, resolution of a motion to dismiss for lack of personal jurisdiction made in the Southern District of New York requires a two-step analysis" based upon New York law governing personal jurisdiction. *Id.* First, the court must determine whether there is a statutory basis for jurisdiction.

Second, if such a basis exists, the court must assess whether the exercise of jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment. *Id.*

New York law provides two relevant statutory bases for personal jurisdiction: specific jurisdiction under the long arm statute, CPLR § 302(a), and specific jurisdiction over insurance companies under the New York Insurance Law, N.Y. Ins. L. § 1213.[4]  Under § 302(a), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  Section 1213 confers jurisdiction based upon certain enumerated insurance-related activities, including where an insurer "issu[es] or deliver[s] . . . contracts of insurance to residents of this state or to corporations authorized to do business therein."  N.Y. Ins. L. § 1213(a), (b)(1)(A).  Specific jurisdiction is limited to claims arising from the in-state activity, because it is only through that activity that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its law" and making the exercise of jurisdiction proper.  *Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 196 (S.D.N.Y. 1997) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (emphasis added)).  A claim arises from the defendant's in-state activity if there is a "substantial nexus between the business and cause of action."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).

Industria has submitted a declaration attesting to the following facts.  (Dkt. No. 145 ("Hallberg Decl.").)  Industria, a Swedish corporation with its sole place of business in Sweden, is a captive insurance company of Atlas Copco AB, meaning it was created for the purpose of procuring insurance for Atlas Copco AB and its worldwide operations.  Industria sells insurance

---

[4] New York's long arm statute also provides for general jurisdiction.  CPLR § 301.  However, such jurisdiction is clearly inapplicable to Industria, and Travelers does not suggest otherwise.

policies only to Atlas Copco AB in Sweden.  As a subsidiary of Atlas Copco AB, Atlas Copco is

insured under such policies.  Atlas Copco is a Delaware limited liability company with its

principal place of business located in New Jersey.  Industria does not have a direct contractual

relationship with Atlas Copco, nor does it own or operate any property, mailing address, or

phone number in the United States.  Industria also is not registered to do business in New York,

does not maintain a registered agent in New York or any other state, and does not issue or deliver

insurance policies in New York.  It therefore asserts that the exercise of personal jurisdiction is

improper.

As an initial matter, many of Industria's arguments are based upon Travelers' failure to

allege personal jurisdiction or supporting facts in its Amended Third-Party Complaint.  However,

it is not the duty of the plaintiff to plead personal jurisdiction, but rather that of the defendant to

raise or else waive lack of personal jurisdiction as an affirmative defense.  Wright & Miller, 5

Fed. Prac. & Proc. § 1206 (3d ed.).  Only once the defendant has contested personal jurisdiction

does it become incumbent upon the plaintiff to make a *prima facie* showing of jurisdiction

through its pleadings and affidavits.  Thus, Travelers was not required to plead personal

jurisdiction or facts in support thereof, and the Court's analysis is not restricted to the allegations

in its third-party complaint.

Travelers argues that this Court has jurisdiction over Industria because the latter issued

insurance policies to Atlas Copco "with the expectation that [they] could be claimed upon for

events occurring within New York."  (Dkt. No. 161 ("Opp'n Mem.") at 17 (quoting *Ins. Co. of*

*N.A. v. Pyramid Ins. Co. of Bermuda Ltd.*, No. 92 Civ. 1816 (SMS), 1994 WL 88754, at *2

(S.D.N.Y. Mar. 16, 1994) (Sotomayor, J.) ("*INA*"))).  Travelers subsequently expounds upon this

assertion, stating:

Here, there is no dispute that the Industria Policies were issued to
Atlas Copco AB and its subsidiaries and affiliates, including . . .
Atlas Copco – an alleged successor in interest to Chicago
Pneumatic and a New York resident.  It also cannot be disputed
that certain of the Underlying Claims for which Travelers seeks
contribution of defense costs from Industria arose in or were filed
in New York.

(*Id.* at 19-20.)  Thus, Travelers argues that because Atlas Copco was a successor in interest to

Chicago Pneumatic and a New York resident, and certain Underlying Claims arose in or were

filed in New York, Industria had the expectation that its policies could be claimed upon for

events occurring in New York.

The cases cited by Travelers regarding an "expectation" that policies could be claimed in

New York stand for the uncontroversial rule, codified in § 1213 of the Insurance Law, that an

insurer who issues a policy to a corporation authorized to do business in New York is subject to

jurisdiction in this state.  *See, e.g.*, *Armada Supply Inc. v. Wright*, 858 F.2d 842, 848-49 (2d Cir.

1988) (finding jurisdiction under §§ 302(a)(1) and 1213 over a Brazilian underwriter because the

policy covered a corporation authorized to do business in New York, and contracting to insure

property in New York amounted to supplying services in the state); *Twin City Fire Ins. Co. v.

Harel Ins. Co. Ltd.*, No. 10 Civ. 07482 (BSJ), 2011 WL 3480948, at *1-2 (S.D.N.Y. Aug. 5,

2011) (concluding that pursuant to § 302(a)(1), court had jurisdiction where an Israeli insurer

issued a policy to a New York subsidiary of an Israeli corporation); *INA*, 1994 WL 88754, at *2

& n.1 (relying upon *Wright* to conclude that court had jurisdiction pursuant to § 302(a)(1) over a

Bermudan insurer that issued a policy to a corporation authorized to do business in New York,

and would have possessed jurisdiction under § 1213 had the procedure for service of process

been followed).  Travelers does not allege that Atlas Copco is authorized to do business in New

York, so these cases are inapposite.

9

Travelers does, however, allege that Atlas Copco is a resident of New York.  Yet this allegation is buried in an argument in its opposition memorandum, and perplexingly cites as its sole support the Hallberg Declaration, which attests that Atlas Copco is a Delaware company with its principal place of business in New Jersey, rather than a resident of New York.  While the Court cannot resolve factual disputes at this stage, *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) (citation omitted), it can rely upon inconsistencies in Travelers' allegations to conclude that they are not made in good faith or a sufficient basis to reasonably infer jurisdiction.  Because Travelers' sole allegation that would support personal jurisdiction over Industria appears to be an unsupported afterthought, Industria's motion to dismiss is granted, with leave for Travelers to amend within 30 days of this Order.[5]

### B.    The Impleaded Insurers' 12(b)(6) Motions to Dismiss

The Impleaded Insurers identify various reasons why Travelers' amended third-party complaint fails to state a claim.  Apart from short paragraphs identifying each as a party, Travelers makes no reference to any of the Impleaded Insurers individually.  (Am. Compl. ¶¶ 8-13.)  Moreover, the sole allegation that Travelers makes regarding the liability of the Impleaded Insurers vaguely states that "certain of the Third-Party Defendant Insurers have previously made offers to participate financially in the defense of Chicago Pneumatic/Atlas Copco in connection with the Underlying Claims."  (*Id.* ¶ 26.)  Travelers does not state who those "certain" insurers are.  Nor does it identify insurance contracts between the Impleaded Insurers and Danaher, Chicago Pneumatic, or Atlas Copco, identify the general terms of such policies, or allege that it may be forced to pay more than its equitable share as a result of this action.

---

[5] The Court notes that if Travelers seeks to invoke the Insurance Law's jurisdictional provisions, it must follow the procedures for service of process set forth therein.  *See INA*, 1994 WL 88754, at *2 n.1.

The crux of Travelers' counterargument is that the Impleaded Insurers are well aware of the factual bases for its claims given that this litigation has been ongoing for over three years and the parties have undertaken extensive discovery.  Travelers asserts that it is telling, for instance, that none of the Impleaded Insurers denies issuing policies to any of the insureds.  The Impleaded Insurers turn this argument on its head, noting that Travelers should therefore have no difficulty identifying the factual bases in its complaint.  The Court agrees.  Without knowing the bases for Travelers' claims, the Impleaded Insurers cannot identify potential defenses or state, on the record, their positions on the facts.[6]  Indeed, the fact that none of the Impleaded Insurers has denied issuing policies to the insureds proves the point: because Travelers has not made such allegations, there is nothing to affirm or deny.  While it is not necessary for Travelers to identify the precise contours of the policies, particularly if it does not have such information, it cannot ignore the pleading requirements simply because the parties may be familiar with the underlying facts.  Those requirements exist not only to place the defendants on notice of the claims against them, but also to provide notice to the court and to facilitate litigation.

Given these omissions, Travelers has failed to state a claim for contribution, which requires, *inter alia*, allegations that the defendant is a co-insurer of the same risk.  *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000).  *National Casualty Co. v. Vigilant Insurance*, cited by Travelers in support, merely highlights the inadequacies of its own complaint: Travelers has not "alleged that it paid to defend [the policyholders] in the [underlying] litigation, that [the Impleaded Insurers] [are] co-insurer[s] obligated to pay [their] pro rata share of these costs, and that [they] failed and refused to pay the amount[s] [they]

---

[6] Travelers relies extensively upon documents outside the complaint to shore up its deficient pleading.  While the Court may consider documents "integral" to the complaint, even if they are submitted by the plaintiff, the Court declines to extend that doctrine to broadly encompass prior proceedings and discovery.  It is the plaintiff's job, not that of the Court or the defendants, to scour the record and identify, in its pleadings, the bases for its claims.

owe[]."  466 F. Supp. 2d 533, 540 (S.D.N.Y. 2006).  The claims for allocation, which are based

upon the contribution claims, fail for the same reasons.  *See Stonewall Ins. Co. v. Asbestos*

*Claims Mgmt. Corp.*, 73 F.3d 1178, 1202 (2d Cir. 1995).  Additionally, Travelers' claims for

equitable subrogation fail as a matter of law because the Second Circuit has recognized that a co-

insurer may not bring such a claim against a co-insurer.  *Md. Cas. Co.*, 218 F.3d at 211; *see also*

*Am. Dredging Co. v. Fed. Ins. Co.*, 309 F. Supp. 425, 428 (S.D.N.Y. 1970) (rejecting co-

insurer's subrogation claim against other co-insurers because "the only right which [the plaintiff]

has against the co-insurers is by way of pro rata contribution").  Finally, because Travelers'

claims underlying its declaratory relief claims have been dismissed, the latter also must be

dismissed.  *See, e.g.*, *Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 610 (S.D.N.Y. 2009).

The Court therefore grants the Impleaded Insurers' motions to dismiss, with leave to amend the

complaint within 30 days of this Order.

### C.    Motion for Contempt of September 2012 Order

The Court's September 2012 Order imposed an obligation upon Travelers to pay defense

costs incurred in the past and going forward.  Danaher and Atlas Copco interpret this general

directive to require Travelers to pay all verified defense costs, as well as pre-judgment interest,

contending that Travelers has unreasonably refused to pay such costs despite being provided

with invoices and other supporting documentation.  Travelers admits that it has refused to pay

defense costs already incurred, but asserts that it has been reasonably diligent in attempting to

comply with the Court's Order and that further direction from the Court is necessary.

Specifically, Travelers notes that the Order did not determine whether the defense costs actually

incurred were reasonable and necessary; enter a sum certain judgment; determine whether pre-

judgment interest should be awarded; or refer the parties to the Magistrate Judge to resolve such

issues.  It also challenges the reasonableness of the defense costs based upon its review of Danaher's documentation.

The Court agrees that civil sanctions are not warranted under the circumstances.  Danaher and Atlas Copco seek a substantial sum—approximately $7.6 million in defense costs, plus $2.5 million in pre-judgment interest.  (Dkt. No. 165 ("Osias Decl.") Ex. 2.)  As was their right, the parties engaged in settlement discussions to resolve the issues raised by Travelers without further resort to litigation.  (Dkt. No. 176 ("Mauriello Decl.") ¶ 4.)  But when those discussions proved unsuccessful, neither Danaher nor Atlas Copco requested further direction or assistance from the Court, instead choosing to file the instant motion.  This was not the appropriate course of action.  An order establishing liability is not the equivalent of an order establishing damages, and absent settlement, courts require further proceedings to determine the amount of damages that flow from an order holding that a party has a duty to defend.  *See, e.g.*, *Burroughs Wellcome Co. v. Comm. Union Ins. Co.*, 713 F. Supp. 694, 698 (S.D.N.Y. 1989) (granting summary judgment to plaintiff on duty to defend for past costs and referring the matter to a magistrate judge "for a determination of the actual dollar amount to which plaintiff is entitled"); *Foxfire, Inc. v. N.H. Ins. Co.*, 1994 WL 361815 (N.D. Cal. July 1, 1994) (determining the amount of reasonable fees and whether to award pre-judgment interest following decision that defendant had a duty to defend).[7]  Indeed, that the parties now vigorously dispute the reasonableness of the defense costs and whether pre-judgment interest is appropriate only confirms that these issues were not resolved by the September 2012 Order.

---

[7] *Telenor Mobile Comms. v. Storm LLC*, cited by Danaher and Atlas Copco, is consistent with this approach: as in *Foxfire*, the issue before the Court was the reasonableness of the fees requested.  No. 07 Civ. 6929 (GEL), 2009 WL 585968, at *2-3 (S.D.N.Y. Mar. 9, 2009).

Because the Order did not resolve these issues, let alone clearly and unambiguously order Travelers to pay all defense costs incurred as well as pre-judgment interest, sanctions are not warranted.  When the settlement talks failed, the parties should have individually or jointly moved the Court to refer the issue of damages to the Magistrate Judge, or, at the least, informed the Court of the status of the action and requested guidance on next steps.  Accordingly, the Court will now refer this matter to Magistrate Judge Francis to determine the amount of damages and whether pre-judgment interest is proper.[8]

The Court is more troubled by Danaher and Atlas Copco's allegations that Travelers has not complied with the order to defend Chicago Pneumatic in pending and future actions, and has not paid any money in connection with the pending actions.[9]  In a letter dated March 3, 2013, Travelers informed Atlas Copco of its intention to defend in accordance with the Court's Order, and stated that it was evaluating whether it was amenable to continuing the use of Danaher's counsel and would communicate with Atlas Copco directly going forward.  (Mauriello Decl. ¶ 7; Ex. B.)  Travelers asserts that, as of April 30, 2013—the date of its opposition memorandum— Danaher's counsel had not sent any defense bills directly to Travelers and it has not received any post-September 2012 invoices.  (*Id.* ¶ 7.)  Danaher and Atlas Copco counter that Travelers did not contact Atlas Copco directly—by phone—until April 19, 2013, nearly three weeks after they filed their motion for contempt.  (Osias Decl. Ex. 4.)  On these facts, Danaher and Atlas Copco have failed to demonstrate, by clear and convincing evidence, that Travelers has not been

---

[8] The Court declines to determine, on a motion for contempt, whether pre-judgment interest is appropriate.

[9] Danaher and Atlas Copco also argue that Travelers has not complied with the September 2012 Order because it stated that it will defend Chicago Pneumatic in future proceedings subject to a complete reservation of rights regarding contribution from other insurers, but the Order required Travelers to defend Chicago Pneumatic without qualification.  This argument is without merit. Travelers is entitled to indicate its preservation of its rights to contribution, as long as it is in fact providing a full defense to Chicago Pneumatic.

reasonably diligent in attempting to comply with the Court's Order. However, to ensure that Travelers satisfies its obligation to defend, the Court will refer this issue to Magistrate Judge Francis as well.

### D.    Motion for Contempt of April 2013 Order

Atlas Copco's second motion for contempt fails for the same reasons as does the first. Magistrate Judge Francis's report and recommendation, adopted in full by the Court, states that Atlas Copco is "entitled to the attorneys' fees it expended in procuring the ruling that Travelers has a duty to defend." *Danaher Corp. v. Travelers Indemnity Co.*, No. 10 Civ. 0121 (JPO)(JCF), 2013 WL 364734, at *6 (S.D.N.Y. Jan. 31, 2013). On February 4, 2013, Atlas Copco e-mailed Travelers a spreadsheet reflecting its attorney's fees related to this action since April 2010 and requested payment. (Dkt. No. 183 ("Breene Decl.") Ex. A.) In an e-mail dated April 8, 2013, Atlas Copco's counsel calculated attorney's fees up to and including September 6, 2012 as $232,427.25. (*Id.*) That same day, Travelers' counsel requested copies of the invoices, rather than simply a spreadsheet, and expressed disagreement with opposing counsel's position that the April 2013 Order required Travelers to pay all fees incurred to date, as opposed to those expended in procuring the ruling. (*Id.*) On May 31, 2013, Atlas Copco's counsel enclosed redacted copies of its invoices to Atlas Copco for the period from March 1, 2010 through September 6, 2012, and stated that he awaited Travelers' prompt response. (*Id.* Ex. D.) Travelers has not made any payments.

As with the September 2013 Order, the April 2013 Order did not enter a sum certain judgment or determine that Atlas Copco's attorney's fees were reasonable. Moreover, the parties appear to have been engaged in global settlement talks that would include resolution of the attorney's fee issue. Under these circumstances, Atlas Copco has not met its burden to warrant contempt sanctions.

The Court cautions Travelers, however, that certain of its actions may support a contempt holding in the future if they are continued.  Specifically, after receiving the invoices it requested, Travelers did not respond until nearly three months later, and only when it was prompted by an e-mail from Atlas Copco's counsel.  (Dkt. No. 185 ("Mauriello Decl."), Ex. A.)  Moreover, Travelers' response that the parties had "discussed the concept of a meeting between Atlas Copco and Travelers to resolve all issues . . . [and thought] it ma[de] sense . . . to have those conversations rather than address the attorney's fees in isolation" is appropriate if Danaher and Atlas Copco are open to settlement talks, but not if they intend to litigate the remaining issues, such that the only action left regarding the April 2013 Order is resolution of the proper attorney's fee award.  (*Id. Cf.* Mauriello Decl. at 4-5 (suggesting that the other parties are not open to settlement negotiations)).  That is, Travelers cannot demand global settlement talks as an ultimatum in lieu of complying with the Court's Order.  Nor can it rely on ongoing settlement discussions to avoid good faith efforts to comply with a preexisting court order.  The Court is mindful of Travelers' failure to pay any fees to date.  While the evidence is not sufficient at this point to find, by clear and convincing evidence, that Travelers has refused to comply with the Order, Danaher and Atlas Copco are invited to re-submit motions for contempt in the event that Travelers continues to drag its feet.  For now, in light of the parties' inability to resolve these issues without court intervention, the Court will refer them to Magistrate Judge Francis.

## IV.   Conclusion

For the foregoing reasons, it is hereby ORDERED that:

Industria's motion to dismiss pursuant to Rule 12(b)(2) is GRANTED;

The Impleaded Insurers' motions to dismiss pursuant to Rule 12(b)(6) are GRANTED;

Danaher and Atlas Copco's motion for contempt is DENIED without prejudice; and

Atlas Copco's motion for contempt is DENIED without prejudice.

Travelers is granted leave to amend its third-party complaint within 30 days of this Order.

The Clerk of Court is directed to terminate the motions at docket numbers 144, 152, 154, 163, and 181.

SO ORDERED.


Dated: New York, New York
       March 21, 2014

                                        _____
                                                J. PAUL OETKEN
                                            United States District Judge