UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
DANAHER CORPORATION,                                  :
                              Plaintiff,              :
                                                      :                10-CV-121 (JPO)
              -v-                                     :
                                                      :                OPINION AND ORDER
THE TRAVELERS INDEMNITY COMPANY, *et* :
*al.*,                                                :
                              Defendants.             :
                                                      :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

        This is a suit brought by Danaher Corporation ("Danaher") to resolve disputes concerning

insurance coverage for silica- and asbestos-related claims against Chicago Pneumatic Tool

Company ("Chicago Pneumatic").  On September 6, 2012, the Court held that Defendants The

Travelers Indemnity Company and Travelers Casualty and Surety Company (collectively,

"Travelers") have a duty to defend such claims.

        On April 17, 2014, Travelers filed a Second Amended Third Party Complaint (Dkt. No.

192 ("SAC")), which impleads five of the six insurers named in a previous version of the third

party complaint: AIU Insurance Company ("AIU"), Century Indemnity Company ("Century

Indemnity"), Liberty Mutual Fire Insurance Company ("Liberty Fire"), Trygg-Hansa Insurance

Company, Ltd. ("Trygg-Hansa"), and Industria Insurance Company ("Industria") (collectively,

the "Impleaded Insurers").

        Currently before the Court are motions filed by AIU, Trygg-Hansa, and Industria

(collectively, the "Moving Insurers") in response to the SAC.  First, Industria moves to dismiss

for lack of personal jurisdiction under Rule 12(b)(2); in the alternative, it moves to compel

arbitration or to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  (Dkt. No. 215.)

1

Second, Trygg-Hansa moves to compel arbitration or, in the alternative, to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  (Dkt. No. 205.)  Third, AIU joins Trygg-Hansa's motion, but only as to its challenge under Rule 12(b)(6).  (Dkt. No. 204.)

For the reasons that follow, Industria's motion to dismiss for lack of personal jurisdiction is denied; Trygg-Hansa's and Industria's motions to compel arbitration are denied; Trygg-Hansa's and AIU's motions to dismiss for failure to state a claim are granted; and Industria's motion to dismiss for failure to state a claim is denied.

## I.    Background

### A.    Factual Background[1]

The Court has summarized the factual underpinnings of this case in previous opinions, and familiarity with the prior proceedings is assumed.  In brief, Danaher purchased Chicago Pneumatic, a tool company, in 1986.  Chicago Pneumatic has been and is the defendant in silica- and asbestos-related products liability claims (the "Underlying Claims") throughout the United States.  Danaher resold Chicago Pneumatic in 1987 to Atlas Copco North America ("Atlas Copco"), but retained liability for products liability losses arising from products manufactured by Chicago Pneumatic prior to the sale and obtained rights to receive the proceeds of insurance policies covering those losses.

Travelers issued comprehensive general liability policies to Chicago Pneumatic and/or Danaher for a number of years until 1987.  A number of insurers issued various other insurance policies to Chicago Pneumatic during the time period in question.  As a result of the Underlying Claims, Danaher has incurred defense and indemnity costs, for which it seeks reimbursement by Travelers and other insurers.  In turn, Travelers seeks to distribute its costs for defending and

---

[1] Unless otherwise noted, the following facts are taken from the allegations in the SAC and documents incorporated by reference in or integral to that submission, including the underlying Amended Complaint (Dkt. No. 22).

indemnifying the Underlying Claims to other insurers that provided coverage to Chicago Pneumatic during the relevant timeframe.

### B.      Relevant Procedural Background

Danaher initiated this action against Travelers and another insurer on January 7, 2010. (Dkt. No. 1.)  Travelers answered and impleaded Atlas Copco.  (Dkt. No. 13.)  On January 3, 2011, Danaher filed an amended complaint naming nine additional insurers as defendants.  (Dkt. No. 22.)  After two years of discovery, Danaher and Atlas Copco moved for summary judgment seeking a declaration that Travelers has a duty under New York law to defend the Underlying Claims.  (Dkt. No. 53.)  In a bench decision issued September 6, 2012, the Court granted the motion and held that Travelers has a "duty to defend in the past and in the future."  (Dkt. No. 98; Dkt. No. 117, Ex. D at 8.)

On January 15, 2013, Travelers amended its third-party complaint, impleading six insurers—AIU, Century Indemnity, Liberty Mutual Insurance Company, Liberty Fire, Trygg-Hansa, and Industria—and asserting claims for declaratory judgment, allocation, contribution, and equitable subrogation.  (Dkt. No. 123 ("Am. Compl.").)  On March 15, 2013, the six insurers impleaded by that complaint moved to dismiss Travelers' third-party complaint.  (Dkt. Nos. 144, 149, 152, 154, 158.)  In an amended opinion and order dated March 21, 2014, the Court granted the insurers' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Industria's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121 (JPO), 2014 WL 1133472 (S.D.N.Y. Mar. 21, 2014).  The same order allowed the Travelers to amend the third-party complaint to correct the deficiencies identified in the opinion.  *Id.* at *6.  Accordingly, on

April 17, 2014, Travelers filed the SAC, naming five of the same insurers: AIU, Century

Indemnity, Liberty Fire, Trygg-Hansa, and Industria.[2]

Liberty Fire and Century Indemnity have answered the SAC.  (Dkt. Nos. 203, 212.)  AIU,

Trygg-Hansa, and Industria have each filed the motions opposing the SAC presently before the

Court.  (Dkt. Nos. 204, 205, 215.)  These motions seek, in various combinations, (1) dismissal

for lack of personal jurisdiction; (2) an order compelling arbitration, and the stay or dismissal of

this action; or (3) dismissal for failure to state a claim.

## II.     Discussion

### A.      Industria's 12(b)(2) Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff

bears the burden of establishing personal jurisdiction.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725,

727 (2d Cir. 2012).  Where the court relies on pleadings and affidavits, the plaintiff "need only

make a *prima facie* showing of personal jurisdiction" to prevail.  *CutCo Indus., Inc. v. Naughton*,

806 F.2d 361, 364 (2d Cir. 1986).  All jurisdictional allegations "are construed in the light most

favorable to the plaintiff and doubts are resolved in the plaintiff's favor."  *A.I. Trade Fin., Inc. v.*

*Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  However, the Court will not "draw

argumentative inferences in the plaintiff's favor, nor . . . accept as true a legal conclusion

couched as a factual allegation."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d

50, 59 (2d Cir. 2012) (citation and internal quotation marks omitted).

A district court sitting in diversity generally "may exercise personal jurisdiction to the

same extent as the courts of general jurisdiction of the state in which it sits."  *Bank Brussels*

*Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  District courts

deciding a motion to dismiss for lack of personal jurisdiction thus engage in a two-part analysis,

---

[2] This time, the third-party complaint does not implead Liberty Mutual Insurance Company.

first deciding whether jurisdiction is proper under the laws of the forum state (here New York), and second determining whether the exercise of jurisdiction comports with due process.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

### 1.      Statutory Jurisdiction

New York law provides two relevant statutory bases for personal jurisdiction: specific jurisdiction under the long-arm statute, CPLR § 302(a), and specific jurisdiction over insurance companies under the New York Insurance Law, N.Y. Ins. Law § 1213.[3]  Under § 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the cause of action arises from the in-state activity.  A claim arises from the defendant's in-state activity if there is a "substantial nexus between the business and cause of action."  *Grand River Enters.*, 425 F.3d at 166 (internal quotation marks omitted).  Furthermore, Section 1101 of the New York Insurance Law provides that making "any insurance contract, including either issuance or delivery of a policy or contract of insurance to a resident of this state or to any firm, association, or corporation authorized to do business herein, or solicitation of applications for any such policies or contracts," whether "effected by mail from outside this state or otherwise," constitutes "doing an insurance business in this state and shall constitute doing business in the state" pursuant to CPLR § 302.  N.Y. Ins. Law § 1101(b)(1)(A).

Section 1213 confers jurisdiction based upon certain enumerated insurance-related activities, including where an insurer "issu[es] or deliver[s] . . . contracts of insurance to residents of this state or to corporations authorized to do business therein" or conducts "any other transaction of business" in New York.  N.Y. Ins. Law § 1213(a), (b)(1)(A), (b)(1)(D).  This section "creates a very broad implied agency of service with the superintendent of insurance"

---

[3] The parties do not invoke New York's general jurisdiction statute, CPLR § 301.

and thereby "provides a method for New York courts to obtain personal jurisdiction over a defendant," while "going to the very perimeters of due process." *Cavaliere v. N.J. Ins. Underwriting Ass'n*, 653 N.Y.S.2d 692, 693 (App. Div. 2d Dep't 1997).

The precise relationship between these statutory bases for jurisdiction over insurers is not well defined in the New York case law. However, it is clear that insurers that issue policies to corporations authorized to do business in New York are subject to jurisdiction in this state. *See, e.g.*, *Armada Supply Inc. v. Wright*, 858 F.2d 842, 848-49 (2d Cir. 1988) (concluding that jurisdiction was proper under §§ 302(a)(1) and 1213(b)(1)(D) over a Brazilian underwriter because the policy covered a corporation authorized to do business in New York, and contracting to insure property in New York amounted to supplying services in the state); *Twin City Fire Ins. Co. v. Harel Ins. Co. Ltd.*, No. 10 Civ. 07482 (BSJ) (GWG), 2011 WL 3480948, at *1-2 (S.D.N.Y. Aug. 5, 2011) (concluding that pursuant to § 302(a)(1), court had jurisdiction where an Israeli insurer issued a policy to an Israeli company and its New York subsidiary); *Ins. Co. of N. Am. v. Pyramid Ins. Co. of Bermuda Ltd.*, No. 92 Civ. 1816, 1994 WL 88754, at *2 & n.1 (S.D.N.Y. Mar. 16, 1994) (Sotomayor, J.) [hereinafter "*INA*"] (relying on *Armada Supply* to conclude that court had jurisdiction pursuant to § 302(a)(1) over a Bermudan insurer that issued a policy to a corporation authorized to do business in New York, and would have possessed jurisdiction under § 1213 had the procedure for service of process been followed).

Industria, a Swedish corporation with its sole place of business in Sweden, is a captive insurance company of Atlas Copco AB, Atlas Copco's Swedish parent company. In other words, Industria was created for the purpose of procuring insurance for Atlas Copco AB and its worldwide operations. (Dkt. No. 145 ("Hallberg Decl.") ¶¶ 5-6.) Industria sells insurance policies only to Atlas Copco AB in Sweden; as a subsidiary of Atlas Copco AB, Atlas Copco is insured under such policies. (*Id.* ¶¶ 8-9.) Atlas Copco is a Delaware limited liability company

6

with its principal place of business located in New Jersey. (*Id.* ¶ 9.) Industria does not have a direct contractual relationship with Atlas Copco, nor does it employ personnel or own or operate any property, mailing address, or phone number in the United States. Industria also is not registered to do business in New York, does not maintain a registered agent in New York or any other state, and does not issue or deliver insurance policies in New York. (*Id.* ¶¶ 10, 12-17.) On this basis, it asserts that the exercise of personal jurisdiction is improper.

The previous version of the third-party complaint was dismissed against Industria for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See Danaher*, 2014 WL 1133472, at *4-6. The prior decision largely hinged on the fact that Travelers had not alleged that Chicago Pneumatic and Atlas Copco were authorized to do business in New York. *Id.* at *5. The SAC, however, does make that allegation as to both companies. (SAC ¶¶ 12-13.) It further alleges that Industria issued insurance policies to "Atlas Copco AB and all of its subsidiaries and affiliates," including Atlas Copco. (*Id.* ¶ 29.) Travelers argues that the SAC thereby corrects the shortcomings of the prior version as to personal jurisdiction. (Dkt. No. 219 ("Travelers Br.") at 10.)

In its present 12(b)(2) motion, Industria does not contest the assertion that the insured parties were authorized to do business in New York. Changing its line of attack, Industria now argues that its sale of policies to the Swedish parent entity Atlas Copco AB does not constitute the issuance or delivery of insurance in New York for purposes of CPLR § 302 or Insurance Law § 1213, even though those policies also covered Atlas Copco. This argument is unavailing. New York law subjects an insurer to the jurisdiction of courts in the state if it issues insurance policies that cover the activities of corporations authorized to do business in the state. *See Twin City*, 2011 WL 3480948, at *2. It is immaterial whether this is because an insurer providing such insurance thereby "transacts business" pursuant to Insurance Law § 1213 and CPLR § 302, or

7

"contracts anywhere to supply . . . services in the state" pursuant to CPLR § 302: either way, jurisdiction is proper. *See INA*, 1994 WL 88754, at *2; *Constantine v. Stella Maris Ins. Co.*, 948 N.Y.S.2d 802, 805-06 (App. Div. 4th Dep't 2012) (concluding that a foreign captive insurer was subject to personal jurisdiction because it contracted in the Cayman Islands to provide services in New York by providing insurance covering its parent, a Pennsylvania corporation authorized to do business in New York, as well as affiliate companies that operated in New York), *lv. denied*, 953 N.Y.S.2d 179 (N.Y. 2012); *see also Constantine*, 948 N.Y.S.2d at 807-08 (Peradotto, J., concurring in the result) (concluding that the foreign captive insurer was subject to jurisdiction pursuant to because the insurer made an insurance contract "covering a New York risk").

Industria also contends that there is an insufficient nexus between this action and its activity related to New York.  In an affirmation, a representative of Atlas Copco asserts that only seventeen of the asbestos-related Underlying Claims (and no silica claims) were filed in New York, out of a total of about five hundred asbestos and silica actions.  (Dkt. No. 217 ("Breene Aff.") Ex. G.)  Travelers counters that the seventeen asbestos actions filed in New York "account for approximately $300,000 of the total defense costs" incurred in defending against the Underlying Claims.  (Dkt. No. 220 ("Mauriello Aff.") ¶ 6.)  But these quibbles are of little moment: Industria contracted to insure risk in New York, and the percentage of claims made against that insurance arising from incidents within New York is not relevant to the jurisdictional analysis.

Furthermore, there is a distinct nexus between this case and Industria's business activity in New York.  The New York Court of Appeals' interpretation of § 302(a) requires only "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former," and this inquiry is "relatively permissive."  *Licci v. Lebanese Can. Bank, SAL*, 984 N.E.2d 893, 900 (N.Y. 2012).  Here, the relevant legal claim is Travelers' third-

party claim against Industria for contribution and indemnity, not the Underlying Claims. Industria's issuance of insurance policies to Atlas Copco and Chicago Pneumatic is a necessary predicate to the third-party claim: Travelers asserts that it is entitled to contribution and indemnity because of these very policies, whereby Industria insured parties authorized to conduct business in New York. The relationship between Industria's in-state activity and Travelers' claim in this action is manifest.

Because Travelers' SAC arises out of Industria's issuance of insurance to corporations authorized to do business in New York, the exercise of jurisdiction over Industria is proper under New York statutory law.

### 2.    Due Process

Industria also argues that it would offend due process to require it to litigate this case in New York. The relevant inquiries on this point concern whether (1) the defendant had certain minimum contacts with the state, and (2) it would be reasonable for the Court to exercise jurisdiction over the defendant. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). A defendant has sufficient "minimum contacts" when it "purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985), and thus "could foresee being haled into court there," *Bank Brussels Lambert*, 305 F.3d at 127 (internal quotation marks omitted).

The reasonableness inquiry "asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (internal quotation marks omitted). In this analysis, the district court must consider

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001) (internal quotation marks omitted).

As noted above, Industria contracted to provide insurance coverage to companies authorized to do business in New York.  This is sufficient to show that it purposefully availed itself of the forum.  Industria protests that it "took affirmative steps to insure it would never have to litigate in the United States over insurance claims" under the policies at issue, including by designating that Swedish law governs the policies, and that disputes arising from the coverage must be submitted to arbitration in Sweden.  (Dkt. No. 216 ("Industria Br.") at 13.)  But the fact that Industria took steps to resolve certain types of disputes through arbitration rather than in the courts does not outweigh the fact that it provided insurance covering, among other things, companies' business activities in New York.[4]  *See Marsh & McLennan Cos. v. GIO Ins. Ltd.*, No. 11 Civ. 8391 (PAC), 2012 WL 3822357, at *4 n.3 (S.D.N.Y. Aug. 31, 2012) ("To the extent that [Defendant] argues it had no expectation of being haled into court in New York because the Policies require the parties to arbitrate their disputes in London, this argument is meritless. [Defendant] cites no authority for the proposition that, at this stage of the litigation, an arbitration clause in an insurance agreement renders the exercise of jurisdiction fundamentally unfair where the constitutional requirements are otherwise met." (citation omitted)).

As to the factors in the reasonableness analysis, the Court concludes that the exercise of jurisdiction over Industria is proper.  The state has a powerful interest in exercising jurisdiction over companies that contract to insure activity taking place in New York.  *See Twin City*, 2011

---

[4] The question whether the clause in Industria's insurance policies commands that the present dispute be submitted to Swedish arbitration is the subject of a separate motion filed by Industria to compel arbitration, which is addressed below.

WL 3480948, at *3 ("New York has an extremely strong interest in ensuring that insurers follow

through on the commitments they make.").  The Court finds that it would promote efficiency and

the interests of Travelers, as third-party plaintiff, to resolve the interrelated issues of insurance

coverage and contribution arising from the Underlying Claims in the same lawsuit.  As to the

burden on the defendant: Industria is a wholly owned subsidiary of Atlas Copco AB, which is

already deeply involved in this litigation through its North American subsidiary, Atlas Copco.

Industria and Atlas Copco are represented in this litigation by the same law firm.  Thus, it

appears that the burden on Industria is far from insurmountable.  *See Bank Brussels Lambert*,

305 F.3d at 129-30 ("Even if forcing the defendant to litigate in a forum relatively distant from

its home base were found to be a burden, the argument would provide defendant only weak

support, if any, because the conveniences of modern communication and transportation ease

what would have been a serious burden only a few decades ago." (internal quotation marks

omitted)).[5]  Accordingly, because requiring Industria to litigate this suit in New York would not

contravene "traditional notions of fair play and substantial justice," the Court concludes that

jurisdiction is reasonable in the circumstances of this case.  *See INA*, 1994 WL 88754, at *3 ("To

assert jurisdiction over a foreign corporation that issues an insurance policy it knows is likely to

be contested in a forum state does not violate 'traditional notions of fair play and substantial

justice.'").

Last, a contrary conclusion regarding due process is foreclosed by the Court's

determination that jurisdiction is proper under CPLR § 302(a), which has narrower boundaries

than the Due Process Clause.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir.

2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because

---

[5] Additionally, as is often the case, the "inconvenience" of litigating in a far-off forum "cuts both ways," *Chloé*, 616 F.3d at 173, since otherwise Travelers would be forced to litigate in Sweden.

application of N.Y. C.P.L.R. § 302(a) meets due process requirements." (citing *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966))); *see also Armada Supply*, 858 F.2d at 849 (concluding that "no constitutional barriers existed to the district court's exercise of personal jurisdiction" over insurer that had contracted to insure property located in New York). For these reasons, Industria's motion to dismiss for lack of personal jurisdiction is denied.

### B.    Industria's and Trygg-Hansa's Motions to Compel Arbitration

Industria and Trygg-Hansa have each filed motions to compel arbitration. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that contractual agreements to arbitrate are valid and enforceable, *id.* § 2, and further expresses "a liberal federal policy favoring arbitration agreements," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). However, "nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not . . . covered in the agreement" that calls for arbitration. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Next, "[i]f a court finds that the parties agreed to arbitrate, it should then consider whether the dispute falls within the scope of the arbitration agreement." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002).

It is undisputed that there are arbitration clauses in the Trygg-Hansa and Industria insurance policies that, according to Travelers, provided coverage to Atlas Copco[6] that overlaps or coincides with Travelers' coverage. (*See* SAC ¶¶ 26-31; *see, e.g.*, Dkt. No. 206 ("Asner Decl.") Ex. H; Mauriello Aff. Ex. B, at 12.) Travelers does not contend that the broad scope of

---

[6] For the sake of concision, the Court's references to Atlas Copco as insured, throughout this section, apply also to any policies issued to Chicago Pneumatic in the relevant timeframe for which Atlas Copco is the successor in interest to Chicago Pneumatic.

these arbitration agreements would not encompass a dispute over coverage arising from the

insurance contracts.  The issue, rather, is whether Travelers is bound to arbitrate even though it is

not a party to the insurance contracts, which are bilateral agreements between Trygg-Hansa or

Industria, as insurers, and Atlas Copco, as insured.  (*See, e.g.*, Breene Aff. Ex. D; Asner Decl.

Ex. I.)

      As a general matter, the FAA "does not require parties to arbitrate when they have not

agreed to do so."  *Volt Info. Sci., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989).  Thus, a court

should usually "be wary of imposing a contractual obligation to arbitrate on a non-contracting

party."  *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d

88, 97 (2d Cir. 1999).  However, the Second Circuit has recognized that even nonsignatories to

an agreement who do not wish to arbitrate may be bound to do so under one of five theories

based in contract and agency law: "1) incorporation by reference; 2) assumption; 3) agency; 4)

veil-piercing/alter ego; and 5) estoppel."  *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d

773, 776 (2d Cir. 1995).  The only theory relevant here is estoppel.

      A nonsignatory party that has "knowingly accepted the benefit" of a contract can be

bound by an arbitration clause contained in that contract.  *Deloitte Noraudit A/S v. Deloitte

Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993).  For a party to be subject to the estoppel

doctrine, however, it is clear that the benefits it derived from the contract "must be direct—

which is to say, flowing directly from the agreement."  *MAG Portfolio Consultant, GMBH v.

Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (citing *Thomson-CSF*, 64 F.3d at 779).

In *Deloitte Noraudit*, for instance, a nonsignatory party to an agreement governing the use of the

Deloitte trade name was bound by the agreement's arbitration clause because the nonsignatory

"had received a copy of the agreement, raised no objections to it and made use of that trade name

pursuant to the agreement."  *MAG Portfolio*, 268 F.3d at 61 (citing *Deloitte*, 9 F.3d at 1064).  In

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999), the direct benefits accruing to ship owners who were nonsignatories to an admiralty contract between third parties to obtain a ship classification included "significantly lower insurance rates" for the ship and "the ability to sail under the French flag." On the contrary, "the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio*, 268 F.3d at 61 (citing *Thomson-CSF*, 64 F.3d at 778-79).

Industria and Trygg-Hansa contend that Travelers is bound by the arbitration clauses in their respective insurance policies covering Atlas Copco, although Travelers is not a party to those agreements.[7] The Court disagrees. Travelers' cause of action against these insurers sounds in contribution, under the "well-settled principle" that permits "one party jointly liable on an obligation [that] pays more than its pro rata share [to] . . . compel the co-obligors to contribute their share of the amount paid." *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 210 (2d Cir. 2000). Travelers, in seeking contribution, did not knowingly accept a direct benefit of Trygg-Hansa's and Industria's insurance contracts with Atlas Copco. The benefit of these insurance policies ran to Atlas Copco, the insured party. Instead, the interest that Travelers seeks is an "indirect" one, because rather than "flowing directly from the agreement," it "exploits the contractual relation" between the insurers and Atlas Copco that may require Trygg-Hansa and Industria to defend or indemnify Atlas Copco against certain claims—which, in turn, may give rise to a contribution claim by Travelers. *See MAG Portfolio*, 268 F.3d at 61; *see also Md. Cas. Co.*, 218 F.3d at 210-11 ("Contribution rights, if any, between two or more insurance companies

---

[7] The Court notes that Judge Francis previously questioned the validity of this argument, without deciding the question, in his decision in this case granting Travelers leave to file a third-party complaint against the Impleaded Insurers. *See Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121 (JPO) (JCF), 2013 WL 150027, at *5-6 (S.D.N.Y. Jan. 10, 2013).

insuring the same event are not based on the law of contracts.  This follows from basic common

sense because the contracts entered into are formed between the insurer and the insured, not

between two insurance companies.  Accordingly, whatever rights the insurers have against one

another do not arise from contractual undertakings."); *cf. Am. Dredging Co. v. Fed. Ins. Co.*, 309

F. Supp. 425, 428 (S.D.N.Y. 1970) (stating that an insurer "has no right to recover on [co-

insurers'] policy of insurance as such. The only right which [the insurer] has against the co-

insurers is by way of pro rata contribution").  Because Travelers has not accepted a direct

contractual benefit, it cannot be compelled to arbitrate under contracts to which it is not a party.[8]

---

[8] Trygg-Hansa and Industria cite *Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F. Supp. 2d 182, 186-88 (E.D.N.Y. 2006), but it is not to the contrary.  There, the court held that a plaintiff company that was not a signatory to an insurance agreement—but was *itself* an "additional insured" under the agreement—was bound to arbitrate, because the company was seeking "to avail itself of the protection and direct benefits afforded by the policy."  *Id.* at 187.  Similarly, in *Alfa Laval U.S. Treasury Inc. v. National Union Fire Insurance Co.*, 857 F. Supp. 2d 404, 414-15 (S.D.N.Y. 2012), the plaintiffs were nonsignatories to, but direct beneficiaries of, indemnity agreements that caused the issuance of insurance policies covering the plaintiffs.  There is no claim that Travelers is insured pursuant to the Trygg-Hansa or Industria policies or that its action is an attempt to claim directly on that insurance, so *Best Concrete* and *Alfa Laval* are inapt.

As to *Duke University v. National Union Fire Insurance Co.*, No. 1:08CV854, 2010 WL 456940 (M.D.N.C. Feb. 4, 2010), the Court notes at the outset that this is an out-of-district magistrate judge's report and recommendation, which was never adopted (nor the objections thereto addressed) by the district court before the case was dismissed by stipulation.  *See* Docket Nos. 50, 53-55, 59, No. 1:08CV854 (M.D.N.C. closed Feb. 22, 2011).  More importantly, *Duke University* appears to misread the Fourth Circuit cases on estoppel, which seem to be in line with the law of this circuit.  In *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000), the court held a plaintiff was estopped from refusing to arbitrate because, although a nonsignatory to the agreement containing the arbitration clause, it attempted to seek direct benefits to itself that were contemplated in the original underlying contracts.  *See id.* at 418.  In a subsequent decision, the Fourth Circuit cautioned against overreading *International Paper*, and rejected the contention that "a nonsignatory seeks a direct benefit whenever a contract provides part of the factual foundation for its complaint."  *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 161 (4th Cir. 2004) (internal quotation marks omitted).  In *Griffin*—like here—the benefit to the plaintiff flowed from a source separate from the underlying contract, even if the contract was a but-for cause of that benefit.  *Id.* at 162-63.  Because the suit was not trying to enforce "a duty created solely by the . . . contract," the court held that the plaintiff was not bound to arbitrate.  *Id.* at 164 (brackets and internal quotation marks omitted).  The decision in *Duke* construes the doctrine too broadly,

Industria cites cases rooted in the doctrines of subrogation or assignment that suggest that an arbitration clause could be enforced against a nonsignatory to a contract. (*See* Industria Br. at 16-17.)  But even if this is true in the context of subrogation and assignment, those doctrines are distinct from contribution.  In a subrogation claim, "the plaintiff must be seeking to recover from the third-party wrongdoer responsible for injuring the insured."  *Twin City*, 2011 WL 3480948, at *3.  Claims seeking relief from a co-insurer, on the other hand, are "not subrogation claims, but are instead firmly rooted in the 'well-settled principle in the law of contribution that when one party jointly liable on an obligation pays more than its pro rata share, it may compel the co-obligors to contribute their share of the amount paid.'"  *Id.* at *4 (quoting *Md. Cas. Co.*, 218 F.3d at 210).  For this reason, the court in *Twin City* rejected an attempt to enforce a forum selection clause against a nonsignatory party, on the basis that an action for contribution does not subject a party to this type of contractual defense.  *Id.* at *3-4.  The arbitration provision here occupies the same position as the forum selection clause in *Twin City*.

Assignment, on the other hand, is a "contractual transfer of a right, interest, or claim from one person to another.  An assignee stands in the shoes of the assignor and [is] subject to all equities against the assignor."  *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 966 F. Supp. 2d 270, 279 (S.D.N.Y. 2013) (brackets, ellipsis, and internal quotation marks omitted), *aff'd*, 762 F.3d 165 (2d Cir. 2014).  "This principle applies under New York law even when the restriction at issue is a commitment to arbitrate."  *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 362 (S.D.N.Y. 2003).  But in this case, there is no allegation that Atlas Copco has

---

however, and comes to its determination based on its conclusion that a third-party plaintiff insurer's claims "rest entirely on the asserted obligations of [the impleaded insurer] to [the insured] under the insurance policy containing the arbitration clause," 2010 WL 456940, at *3, though this reasoning was disavowed by *Griffin* and is also called into question by the conceptual underpinnings of contribution law.  Accordingly, the Court declines to adopt the analysis of *Duke University*.

contractually assigned to Travelers the rights flowing from the insurance contracts between Atlas Copco, on the one side, and Trygg-Hansa and Industria, on the other.  Rather, Travelers' claim seeks equitable relief to oblige other insurers to pay their share (if any) of defense and indemnification costs arising from the Underlying Claims.  Accordingly, the assignment and subrogation cases that Industria cites are inapposite.

The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam*, 537 U.S. at 83 (internal quotation marks omitted).  Because Travelers is not a party to the insurance contracts, and principles of estoppel do not require Travelers to arbitrate the dispute pursuant to those agreements, the motions to compel arbitration are denied.

### C.    The Moving Insurers' 12(b)(6) Motions to Dismiss

In considering a motion to dismiss for failure to state a claim, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the pleader's favor. *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014).  However, the court will not consider mere conclusory allegations lacking a factual basis, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011), nor "[t]hreadbare recitals of the elements of a cause of action" amounting to no more than legal conclusions, *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009).

The gravamen of the SAC (as relevant here) is that, pursuant to equitable principles, Travelers is entitled to contribution or indemnity for the Impleaded Insurers' portion of defense costs and indemnity payments related to the Underlying Claims against Atlas Copco.  As to defense costs, the SAC asserts that the Impleaded Insurers "are co-insurers of the same risk," but nonetheless "Travelers has been paying and continues to pay more than its equitable share of Chicago Pneumatic/Atlas Copco's defense costs for the Underlying Claims."  (SAC ¶ 52.) Likewise, the SAC says that Travelers is "only obligated, if at all, to participate in the indemnity

on behalf of Chicago Pneumatic/Atlas Copco in the Underlying Claims for its pro-rata, time-on-the-risk share, and [the Impleaded Insurers and others] . . . are responsible" for portions of that amount.  (*Id.* ¶ 56.)  As to the individual insurers, however, the allegations diverge.  According to the SAC, AIU and Trygg-Hansa issued "various *excess* liability insurance policies" to Chicago Pneumatic or Atlas Copco (*id.* ¶¶ 19, 26 (emphasis added)), while Industria issued "various *primary* liability insurance policies" (*id.* ¶ 29 (emphasis added)).

The Moving Insurers each argue that Travelers' SAC fails under Rule 12(b)(6).  Trygg-Hansa and AIU contend that the SAC does not allege that their excess policies have been "triggered" by the exhaustion of primary insurance.  (Dkt. No. 207 ("Trygg-Hansa Br.") at 12-13.)[9]  Similarly, Industria argues that Travelers has failed to allege that the Underlying Claims will reach its policy.  (Industria Br. at 20-21.)

Under New York law, as noted above, "when one party jointly liable on an obligation pays more than its pro rata share, it may compel the co-obligors to contribute their share of the amount paid" in a contribution action.  *Md. Cas. Co.*, 218 F.3d at 210.  In the insurance context, therefore, "New York law recognizes a cause of action for pro rata contribution when a co-insurer pays more than its fair share for a loss covered by multiple insurers."  *Nat'l Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 540 (S.D.N.Y. 2006); *see also Md. Cas. Co.*, 218 F.3d at 211 ("Where more than one insurer has issued policies covering the same risk, a court of equity will exercise jurisdiction over the entire controversy to resolve the rights of all the interested parties . . . .").

"'[P]rimary' insurance refers to the first layer of insurance coverage that attaches immediately upon the occurrence of a policy-defined liability or loss," while "[e]xcess liability

---

[9] AIU did not file a separate brief, and simply joins the 12(b)(6) argument presented by Trygg-Hansa.  (Dkt. No. 204.)

policies . . . provide an additional layer of coverage for losses that exceed the limits of a primary liability policy." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013) (internal quotation marks omitted).  For purposes of insurance indemnity, "[a]n excess insurance policy . . . is not triggered unless the coverage limits of lower-level policies have first been exhausted." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 104 (2d Cir. 2012); *see also Am. Home Assurance Co. v. Int'l Ins. Co.*, 684 N.E.2d 14, 18 (N.Y. 1997) (stating that excess insurance coverage "attaches only after the primary coverage for the occurrence is exhausted").  Furthermore, "a primary insurer has a duty to defend without any entitlement to contribution from an excess insurer." *Gen. Motors Acceptance Corp. v. Nationwide Ins. Co.*, 828 N.E.2d 959, 961 (N.Y. 2005) (internal quotation marks omitted).

*Trygg-Hansa and AIU.*  The SAC characterizes the insurance policies issued by Trygg-Hansa and AIU as "excess liability insurance policies" (SAC ¶¶ 19, 26), but does not state that those policies have yet attached.  Accordingly, Travelers has not pleaded that Trygg-Hansa's and AIU's excess policies are implicated at this time.  Although the SAC says that Travelers and all of the Impleaded Insurers are "co-insurers of the same risk" (SAC ¶ 52), this does not undermine the fact that Trygg-Hansa's and AIU's policies are alleged to be *excess* liability policies.  Excess insurance, as observed above, comes into play "only after a predetermined amount of 'primary' coverage has been exhausted." *Am. Home Assurance Co. v. Republic Ins. Co.*, 984 F.2d 76, 77 (2d Cir. 1993).  The SAC contains no allegation that the primary policies have been or will be exhausted through indemnification of the Underlying Claims.  And as to defense costs, while the excess insurers may "elect to participate in an insured's defense to protect [their] interest[s], [they have] no obligation to do so." *Fieldston Property Owners Ass'n v. Hermitage Ins. Co.*, 945 N.E.2d 1013, 1018 (N.Y. 2011) (internal quotation marks omitted).  Because excess policies are

triggered only if the primary policies are exhausted, and there is no claim of the exhaustion of those policies, Travelers has failed to state a claim against Trygg-Hansa and AIU.

*Industria.*  Industria contends that Travelers' SAC is deficient because it "failed to plead any facts whatsoever to show that the primary policies could be exhausted by the Underlying Claims such that any Industria Policies could be triggered." (Industria Br. at 20-21.)  This is more or less equivalent to Trygg-Hansa's and AIU's argument.  In the context of the allegations against Industria, however, the argument fails: the SAC alleges that the Industria policies at issue were *primary*, not excess, liability insurance policies.  (SAC ¶ 29.)  Thus, Industria and Travelers allegedly issued "policies of insurance [that] cover the same risk," and therefore "the insurer who has paid the loss to its assured" can sue for "pro rata contribution from co-insurers."  *Am. Dredging Co.*, 309 F. Supp. at 428.  There is no need for Travelers to allege that other primary policies are "exhausted" before Industria may have an obligation to pay defense costs and indemnity for the Underlying Claims.  Rather, the SAC asserts that Industria was a primary insurer whose policies covered the same risk as the insurance issued by Travelers, but has not paid its equitable share of the costs; and further that Travelers is currently paying defense costs and may also pay indemnity on the Underlying Claims.  This is sufficient to state a claim against Industria.[10]

---

[10] Industria also makes a halfhearted attempt to argue that the policies it issued "either provide absolute exclusions of asbestos liabilities, or do not provide any real risk transfer with respect to asbestos claims." (Industria Br. at 20.)  As Judge Francis has noted, however, this argument "effectively seeks a ruling on one of the ultimate issues in this litigation"—that is, whether the insurance covers the claims at issue.  *See Danaher*, 2013 WL 150027, at *5.  Industria backs up the first prong of its argument by citing a "dust exclusion" in the Industria policy.  (Industria Br. at 5-6.)  According to an Industria representative, unidentified "Swedish insurance experts" conclude that the dust exclusion "is intended to exclude coverage for both asbestos and silica claims under Swedish law."  (*Id.* at 6; Breene Aff. Ex. E, ¶ 7.)  This argument, based on material outside the complaint, is inappropriate at this stage.  As for the assertion that there is "no real risk transfer," the legal basis for this argument is unclear from Industria's papers, nor is there a

**III.     Conclusion**

For the foregoing reasons, it is hereby ORDERED that:

Industria's motion to dismiss pursuant to Rule 12(b)(2) is DENIED;

Industria's and Trygg-Hansa's motions to compel arbitration are DENIED;

Trygg-Hansa's and AIU's motions to dismiss pursuant to Rule 12(b)(6) are GRANTED, and all claims against Trygg-Hansa and AIU are DISMISSED; and

Industria's motion to dismiss pursuant to Rule 12(b)(6) is DENIED.  Industria's answer to the SAC shall be filed by January 15, 2015.

The Clerk of the Court is directed to terminate the motions at docket numbers 204, 205, and 215.

SO ORDERED.


Dated:  December 11, 2014
        New York, New York

_____
        J. PAUL OETKEN
        United States District Judge

---

showing that the factual basis for the argument is established by the complaint and incorporated documents.  The Court denies Industria's motion to dismiss on these grounds.