# EXHIBIT B

**Allianz Underwriters, Inc.** 
(Hereinafter called the Company)

CLOSED IN PRS

## Excess Umbrella Liability Policy

5900 Wilshire Boulevard
Los Angeles, Calif. 90036

Policy No. AUX 5202265

P.O. Address (No., Street, Town, County, State)

PRODUCER

**Item 1.**
**NAMED INSURED**
CHICAGO PNEUMATIC TOOL COMPANY, ET AL
(AS PER ENDORSEMENT NUMBER 3 ATTACHED)

6 EAST 44TH STREET
NEW YORK, NEW YORK 10017

A.J. RENNER & ASSOCIATES, INC.
100 SOUTH WACKER DRIVE
SUITE 17276
CHICAGO, ILLINOIS 60606

**EXPIRED**

**Item 2.** Policy Period:
From APRIL 1, 1985 to APRIL 1, 1986
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

See Endt #7

**Item 3.** Underlying Umbrella Policies: A) $5,000,000. IN EXCESS OF PRIMARY INSURANCE(S) AND/OR SELF-INSURED RETAINED LIMIT - UNDERWRITERS AT LLOYDS' LONDON (80%), POLICY NUMBER TO BE ADVISED, ALLIANZ UNDERWRITERS INSURANCE COMPANY (20%), POLICY NUMBER AUL5 1914 08;
B) $45,000,000. IN EXCESS OF A) - VARIOUS, AS PER SCHEDULE ON FILE WITH THIS COMPANY

**Item 4.** Underlying Umbrella Limits (Insuring Agreement 2): $50,000,000.

**Item 5.** Underlying Umbrella Aggregate Limits (Insuring Agreement 2): $50,000,000.

**Item 6.** Limits of Liability (Insuring Agreement 2): $2,000,000. PART OF $25,000,000.

**Item 7.** Aggregate Limit of Liability (Insuring Agreement 2): $2,000,000. PART OF $25,000,000.

X-REFERENCE
AUL 5101408

**Item 8.** Premium: $6,000.00
Rate of Adjustment: FLAT

Countersigned by:
Authorized Representative
CF/DD/sd

APRIL 19, 1985
Date

IN WITNESS WHEREOF the Company has caused this Policy to be signed by its President and Secretary, but same shall not be binding upon the Company unless countersigned by an authorized representative of the Company.

FORM ATTACHED: A.U.I. 0-0048



| | |
|---|---|
| The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date. | ENDORSEMENT NO. 7 |

THIS ENDORSEMENT FORMS A PART OF

POLICY NUMBER  AUX5202265

ISSUED BY Allianz Underwriters Insurance Company

AND IS EFFECTIVE  APRIL 1, 1985

12:01 A.M. STANDARD TIME.

NAMED INSURED

CHICAGO PNEUMATIC TOOL COMPANY, ET AL

IT IS UNDERSTOOD AND AGREED THAT ITEM 3 OF THE DECLARATIONS, UNDERLYING UMBRELLA POLICIES, IS AMENDED TO READ AS FOLLOWS:

ITEM 3.  UNDERLYING UMBRELLA POLICIES:  A) $5,000,000. IN EXCESS OF PRIMARY INSURANCE(S) AND/OR SELF-INSURED RETAINED LIMIT - EMPLOYERS INSURANCE OF WAUSAU (80%), POLICY NUMBER TO BE ADVISED, ALLIANZ UNDERWRITERS INSURANCE COMPANY (20%), POLICY NUMBER AEL5 10 14 08; B) $45,000,000. IN EXCESS OF A) - VARIOUS CARRIERS, AS PER SCHEDULE ON FILE WITH THIS COMPANY.

All other terms and conditions of this Policy remain unchanged.

CP/DD/ad
9/13/85

AUTHORIZED REPRESENTATIVE

AUI 0-0010A (5/84)



**SERVICE OF SUIT**

ENDORSEMENT NO. 6

THIS ENDORSEMENT FORMS A PART OF

POLICY NUMBER AUX5202265

ISSUED BY Allianz Underwriters Insurance Company

AND IS EFFECTIVE APRIL 1, 1985

12:01 A.M. STANDARD TIME.

NAMED INSURED

CHICAGO PNEUMATIC TOOL COMPANY, ET AL

It is agreed that in the event of the failure of the company to pay any amount claimed to be due hereunder, the company, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all the requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that service of process in such suit against the company may be made upon Allianz Underwriters Insurance Company or

And that in any suit instituted against it upon this policy, the company will abide by the final decision of such court, or of any appellate court in the event of an appeal. In this connection, each of the foregoing corporations is hereby authorized to accept service of process on behalf of the company in any such suit, or, upon request of the insured prior to the institution of any suit, to give a written undertaking to the insured that it will enter a general appearance in the company's behalf in the event such suit should be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, the company hereby designates the superintendent, commissioner or director of insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this policy and hereby designates each of the above named corporations as a person to whom said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this Policy remain unchanged.
CP/DD/sd
4/19/85

AUTHORIZED REPRESENTATIVE

A.U.I.C. CA 0-0241 (Ed 12/83)

ENDORSEMENT



## AMENDATORY CANCELLATION ENDORSEMENT

IT IS UNDERSTOOD AND AGREED THAT CONDITION 3 OF THIS POLICY, CANCELLATION, IS AMENDED TO READ AS FOLLOWS:

3. CANCELLATION.

THIS POLICY MAY BE CANCELLED BY THE NAMED INSURED OR BY THE COMPANY OR THEIR REPRESENTATIVES BY MAILING WRITTEN NOTICE TO THE OTHER PARTY STATING WHEN NOT LESS THAN SIXTY (60) DAYS' THEREAFTER CANCELLATION SHALL BE EFFECTIVE, EXCEPT IN THE EVENT OF CANCELLATION FOR NONPAYMENT OF PREMIUM THE NOTICE SHALL BE EFFECTIVE TEN (10) DAYS THEREAFTER. THE MAILING OF NOTICE AS AFORESAID BY UNDERWRITERS OR THEIR REPRESENTATIVES TO THE NAMED INSURED AT THE ADDRESS SHOWN IN THIS POLICY SHALL BE SUFFICIENT PROOF OF NOTICE AND THE INSURANCE UNDER THIS POLICY SHALL END ON THE EFFECTIVE DATE AND HOUR OF CANCELLATION STATED IN THE NOTICE. DELIVERY OF SUCH WRITTEN NOTICE EITHER BY THE NAMED INSURED OR BY THE COMPANY OR THEIR REPRESENTATIVES SHALL BE EQUIVALENT TO MAILING.

IF THIS POLICY SHALL BE CANCELLED BY THE NAMED INSURED THE COMPANY SHALL RETAIN THE CUSTOMARY SHORT RATE PROPORTION OF THE PREMIUM FOR THE PERIOD THIS INSURANCE HAS BEEN IN FORCE. IF THIS POLICY SHALL BE CANCELLED BY THE COMPANY THE COMPANY SHALL RETAIN THE PRO RATA PROPORTION OF THE PREMIUM FOR THE PERIOD THIS POLICY HAS BEEN IN FORCE. NOTICE OF CANCELLATION BY THE COMPANY SHALL BE EFFECTIVE EVEN THOUGH THE COMPANY MAKES NO PAYMENT OR TENDER OF RETURN PREMIUM.

All other terms and conditions of this Policy remain unchanged.

(The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.)

Effective APRIL 1, 1985

this endorsement forms part of Policy Number AUX5202265

of ALLIANZ UNDERWRITERS INSURANCE COMPANY

Issued to CHICAGO PNEUMATIC TOOL COMPANY, ET AL

Endorsement No. 5

CP/BD/sd
4/19/85

AUTHORIZED REPRESENTATIVE



## ENDORSEMENT
## EXCESS UMBRELLA LIABILITY POLICY
## AMENDATORY ENDORSEMENT - NEW YORK

1. IT IS HEREBY AGREED THAT, NOTWITHSTANDING ANYTHING IN THIS POLICY TO THE CONTRARY, WITH RESPECT TO SUCH INSURANCE AS IS AFFORDED BY THIS POLICY, THE TERMS AND CONDITION OF THIS POLICY AS RESPECTS COVERAGE FOR OPERATIONS IN THE STATE OF NEW YORK SHALL CONFORM TO THE COVERAGE REQUIREMENTS OF THE APPLICABLE INSURANCE LAWS OF THE STATE OF NEW YORK OR THE APPLICABLE REGULATIONS OF THE NEW YORK INSURANCE DEPARTMENT; PROVIDED, HOWEVER, THAT THE COMPANY'S LIMIT OF LIABILITY AS STATED IN THIS POLICY SHALL BE IN EXCESS OF THE LIMITS OF LIABILITY OF ANY UNDERLYING INSURANCE OR SELF-INSURANCE AS STATED IN THE DECLARATIONS OR IN ANY ENDORSEMENT ATTACHED HERETO.

2. IN CONFORMITY WITH THE PROVISIONS OF ARTICLE VII, SECTION 167.1 OF THE NEW YORK INSURANCE LAW THIS POLICY SPECIFICALLY INCLUDES THE FOLLOWING SUB-SECTIONS OF THE LAW:

   (A) THE INSOLVENCY OR BANKRUPTCY OF THE INSURED, OR THE INSOLVENCY OF HIS OR HER ESTATE, SHALL NOT RELEASE THE INSURER FROM THE PAYMENT OF DAMAGES FOR INJURY SUSTAINED OR LOSS OCCASIONED DURING THE LIFE OF AND WITHIN THE COVERAGE OF THIS POLICY.

   (B) IN CASE JUDGMENT AGAINST THE INSURED OR HIS PERSONAL REPRESENTATIVE IN AN ACTION BROUGHT TO RECOVER DAMAGES FOR INJURY SUSTAINED OR LOSS OR DAMAGE OCCASIONED DURING THE LIFE OF THIS POLICY, SHALL REMAIN UNSATISFIED AT THE EXPIRATION OF THIRTY (30) DAYS FROM THE SERVING OF NOTICE OF ENTRY, OF JUDGMENT UPON THE ATTORNEY FOR THE INSURED OR UPON THE INSURED, AND UPON THE INSURER, THEN AN ACTION MAY, EXCEPT DURING A STAY OR LIMITED STAY OF EXECUTION AGAINST THE INSURED ON SUCH JUDGMENT, BE MAINTAINED AGAINST THE INSURER UNDER THE TERMS OF THE POLICY OR CONTRACT FOR THE AMOUNT OF SUCH JUDGMENT NOT EXCEEDING THE AMOUNT OF THE APPLICABLE LIMIT OF COVERAGE UNDER THIS POLICY.

All other terms and conditions of this Policy remain unchanged.

(The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.)

Effective **APRIL 1, 1985**  this endorsement forms part of Policy Number **AUX5202265**

of **ALLIANZ UNDERWRITERS INSURANCE COMPANY**

Issued to **CHICAGO PNEUMATIC TOOL COMPANY, ET AL**

Endorsement No. **4 (Page 1 of 2)**

CP/DD/sd
4/19/85

AUTHORIZED REPRESENTATIVE

ENDORSEMENT 

(C) NOTICE GIVEN BY OR ON BEHALF OF THE INSURED, OR WRITTEN NOTICE BY OR ON BEHALF OF THE INJURED PERSON OR ANY OTHER CLAIMANT, TO ANY LICENSED AGENT OF THE INSURER IN THIS STATE, WITH PARTICULARS SUFFICIENT TO IDENTIFY THE INSURED, SHALL BE DEEMED NOTICE TO THE INSURER.

(D) FAILURE TO GIVE ANY NOTICE REQUIRED TO BE GIVEN BY THE POLICY WITHIN THE TIME PRESCRIBED THEREIN SHALL NOT INVALIDATE ANY CLAIM MADE BY THE INSURED OR BY ANY OTHER CLAIMANT THEREUNDER IF IT SHALL BE SHOWN NOT TO HAVE BEEN REASONABLY POSSIBLE TO GIVE SUCH NOTICE WITHIN THE PRESCRIBED TIME AND THAT NOTICE WAS GIVEN AS SOON AS WAS REASONABLY POSSIBLE.

3. THE COMPANY SHALL NOT SETTLE ANY CLAIM HEREUNDER WITHOUT THE CONSENT OF THE INSURED. IF, HOWEVER, THE INSURED REFUSES TO CONSENT TO ANY SETTLEMENT MUTUALLY AGREED UPON BY THE COMPANY AND THE PLAINTIFF RECOMMENDED IN WRITING BY THE COMPANY AND SHALL ELECT TO CONTEST OR CONTINUE ANY LEGAL PROCEEDINGS, THE LIABILITY OF THE COMPANY SHALL NOT EXCEED THE AMOUNT FOR WHICH THE CLAIM COULD HAVE BEEN SETTLED PLUS THE COSTS AND EXPENSES INCURRED UP TO THE DATE OF SUCH REFUSAL.

All other terms and conditions of this Policy remain unchanged.

(The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date.)

Effective APRIL 1, 1985    this endorsement forms part of Policy Number AUX5202265

of ALLIANZ UNDERWRITERS INSURANCE COMPANY

Issued to CHICAGO PNEUMATIC TOOL COMPANY, ET AL

Endorsement No. 4 (page 2 of 2)

CP/DD/sd
4/19/85

AUTHORIZED REPRESENTATIVE



| | |
|---|---|
| The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date. | ENDORSEMENT NO. 3 |
| THIS ENDORSEMENT FORMS A PART OF POLICY NUMBER AUX5202265 ISSUED BY Allianz Underwriters Insurance Company AND IS EFFECTIVE APRIL 1, 1985 12:01 A.M. STANDARD TIME. | NAMED INSURED CHICAGO PNEUMATIC TOOL COMPANY, ET AL |

IT IS UNDERSTOOD AND AGREED THAT ITEM 1 OF THE DECLARATIONS, NAMED INSURED, IS COMPLETED TO READ AS FOLLOWS:

CHICAGO PNEUMATIC TOOL CO.

CHICAGO PNEUMATIC EQUIPMENT DIV.
CHICAGO PNEUMATIC TOOL DIV.
CHICAGO PNEUMATIC DRILL DIV.
THE JACOBS MANUFACTURING CO.
THE ALLEN MANUFACTURING CO.
QUALITROL CORPORATION
THE PARTLOW CORPORATION
FOX VALLEY INSTRUMENT CO.
HORSFORD CORPORATION
HENNESSY INDUSTRIES INC.
DYNAPAR CORPORATION
ALLIED STEEL & TRACTOR PRODUCTS INC.
MATCO TOOL CORPORATION
MATCO-ALLIED EQUIPMENT COMPANY
YORKTOWN INDUSTRIES, INC.
PLEASANT VALLEY INDUSTRIES, INC.
MECHANICS ACCEPTANCE CORPORATION
CHICAGO PNEUMATIC INTERNATIONAL, INC.
CHICAGO PNEUMATIC WORLD TRADE CORPORATION
CHICAGO PNEUMATIC CREDIT CORPORATION
BADA COMPANY
COATS COMPANY
CHICAGO PNEUMATIC SYSTEMS DIVISION
COATES WHEEL BALANCE CORP
SOLAR UNIVERSAL

All other terms and conditions of this Policy remain unchanged.

CP/DD/sd
4/19/85

_AUTHORIZED REPRESENTATIVE_

AUI 0-0010A (5/84)



| | |
|---|---|
| The information below is required to be completed only when this endorsement is issued subsequent to the policy effective date. | ENDORSEMENT NO. 2 |

THIS ENDORSEMENT FORMS A PART OF

POLICY NUMBER __AUX5202265__

ISSUED BY Allianz Underwriters Insurance Company

AND IS EFFECTIVE __APRIL 1, 1985__

12:01 A.M. STANDARD TIME.

NAMED INSURED

CHICAGO PNEUMATIC TOOL COMPANY, ET AL

## ADDRESS CHANGE ENDORSEMENT

Henceforth, the company will be located at the following address:

6435 Wilshire Boulevard
Los Angeles, California  90048

All other terms and conditions of this Policy remain unchanged.

CP/DD/sd
4/19/85

AUTHORIZED REPRESENTATIVE

AUI 0-0010A  (5/84)



ENDORSEMENT NO. 1

| THIS ENDORSEMENT FORMS A PART OF | NAMED INSURED |
|---|---|
| POLICY NUMBER AUX5202265 | CHICAGO PNEUMATIC TOOL COMPANY, ET AL |
| ISSUED BY Allianz Underwriters, Inc. | |
| AND IS EFFECTIVE APRIL 1, 1985 | |
| 12:01 A.M. STANDARD TIME. | |

## NAME CHANGE ENDORSEMENT

Henceforth, the above mentioned company will be known and referred to as Allianz Underwriters Insurance Company.

AUTHORIZED REPRESENTATIVE

A.U.I. CA 0-0226-1 (Ed 9/83).



# Excess Umbrella Liability Policy

THIS POLICY JACKET WITH THE DECLARATIONS PAGE, AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.

A.U.1. 0-0048 (1/80)

NAMED INSURED:

As stated in Item 1 of the Declaration forming a part hereof, and/or subsidiary, associated, affiliated companies or owned and controlled companies as now or hereafter constituted and of which prompt notice has been given to Company.

## INSURING AGREEMENTS

1. COVERAGE.

   Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of the liability
   
   (a) imposed upon the Insured by law;
   
   or (b) assumed under contract or agreement by the Named Insured and/or any officer, director, stockholder, partner or employee of the Named Insured, while acting in his capacity as such,
   
   for damages, direct or consequential and expenses on account of:—
   
   (i) Personal Injuries, including death at any time resulting therefrom;
   (ii) Property Damage;
   (iii) Advertising Liability,
   
   caused by or arising out of each occurrence happening anywhere in the World, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated in Item 3 of the Declarations and issued by the Company(ies) as shown in item 3 above. (hereinafter called the "Underlying Umbrella Insurers").

2. LIMIT OF LIABILITY—UNDERLYING LIMITS.

   It is expressly agreed that liability shall attach to the Company only after the Underlying Umbrella Insurers have paid or have been held liable to pay the full amount of their respective Ultimate Net Loss Liability as follows:—
   
   $ (as stated in Item 4 of the Declaration) Ultimate Net Loss in respect of each occurrence, but
   
   $ (as stated in Item 5 of the Declaration) in the aggregate for each annual period during the currency of this Policy separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured,
   
   and the Company shall then be liable to pay only the excess thereof up to a further
   
   $ (as stated in Item 6 of the Declaration) Ultimate Net Loss in respect of each occurrence—subject to a limit of
   
   $ (as stated in Item 7 of the Declaration) in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and separately in respect of Personal Injury (fatal or non-fatal) by Occupational Disease sustained by any employees of the Assured,

## CONDITIONS

1. PRIOR INSURANCE AND NON-CUMULATION OF LIABILITY.

   It is agreed that if any loss covered hereunder is also covered in whole or in part under any other Excess Policy issued to the Insured prior to the inception date hereof the limit of liability hereon as stated in Items 6 and 7 of the Declarations shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.

   Subject to the foregoing paragraph and to all the other terms and conditions of this Insurance in the event that personal injury or property damage arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy Company will continue to protect the Insured for liability in respect of such personal injury or property damage without payment of additional premium.

2. MAINTENANCE OF UNDERLYING UMBRELLA INSURANCE.

   This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella Policies stated in Item 3 of the Declaration prior to the happening of an occurrence for which claim is made hereunder.

   It is a condition of this Policy that the Underlying Umbrella Policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this Policy.

3. CANCELLATION.

   This Policy may be cancelled by the Named Insured or by the Company or their representatives by mailing written notice to the other party stating when not less than thirty (30) days' thereafter cancellation shall be effective, except in the event of cancellation for nonpayment of premium the notice shall be effective ten (10) days thereafter. The mailing of notice as aforesaid by Underwriters or their representatives to the Named Insured at the address shown in this Policy shall be sufficient proof of notice and the Insurance under this Policy shall end on the effective date and hour of cancellation stated in the notice Delivery of such written notice either by the Named Insured or by the Company or their representatives shall be equivalent to mailing.

If this Policy shall be cancelled by the Named Insured the Company shall retain the customary short rate proportion of the premium for the period this Insurance has been in force. If this Policy shall be cancelled by the Company the Company shall retain the pro rata proportion of the premium for the period this Policy has been in force. Notice of cancellation by the Company shall be effective even though Company makes no payment or tender of return premium.

4. NOTICE OF OCCURRENCE.

Whenever the Insured has information from which they may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Insured shall be held liable, is likely to involve this Policy, notice shall be sent to the Company as soon as practicable, provided, however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this Policy, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

5. OTHER INSURANCE.

If other valid and collectible insurance with any other Insurer is available to the Insured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the Insurance afforded by this Policy, shall be in excess of and shall not contribute with such other Insurance.

## NUCLEAR INCIDENT EXCLUSION

It is agreed that this Policy does not apply:

I. Under any Liability Coverage, to Personal Injury or Property Damage
   (a) with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Liability Coverage, to Personal Injury or Property Damage resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom:
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
   (c) the Personal Injury or Property Damage arising out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

III. As used herein:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,
(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.
(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to Property Damage, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

3