UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANAHER CORPORATION,

                                      Plaintiff,

-v-

THE TRAVELERS INDEMNITY COMPANY, et al.,

                                      Defendants.

---

THE TRAVELERS INDEMNITY COMPANY and TRAVELERS CASUALTY AND SURETY COMPANY,

                                      Third-Party Plaintiffs,

-v-

ATLAS COPCO NORTH AMERICA, INC. (as successor to CHICAGO PNEUMATIC TOOL COMPANY), et al.,

                                      Third-Party Defendants.

10-CV-121 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

On October 10, 2019, the Court published an Opinion and Order resolving the parties' cross-motions for summary judgment. (Dkt. No. 694.)[1] In response, Danaher Corporation ("Danaher") and Atlas Copco North America LLC ("Atlas Copco") filed a motion for leave to appeal (Dkt. No. 682), and North River Insurance Company ("NR") filed motions for partial reconsideration, leave to appeal, and clarification of the Opinion and Order (Dkt. No. 686). The

---

[1] The October 10, 2019 opinion was originally published at Docket Number 667 but was, at the request of the parties, subsequently removed, redacted, and republished at Docket Number 694.

1

Opinion and Order did not resolve Danaher's earlier motion to substitute party, which was filed on September 26, 2019. (Dkt. No. 658.) The Court now addresses these pending motions. Familiarity with the facts and with this Court's prior opinions is presumed.

I. **Danaher and Atlas Copco's Motion for Leave to Appeal**

In its Opinion and Order, the Court affixed liability on Danaher and Atlas Copco for certain costs borne by Travelers Indemnity Company and Travelers Casualty and Surety Company (together, "Travelers") in defending Chicago Pneumatic Tool Company ("Chicago Pneumatic") against asbestos- and silica-related bodily injury claims ("Underlying Claims"). (Dkt. No. 694 at 18.) Specifically, the Court held that Danaher and Atlas Copco were "responsible for contribution . . . for years in which Chicago Pneumatic," Danaher's former subsidiary, which Danaher sold to Atlas Copco in 1987, "was uninsured or where its insurers have become insolvent." (Dkt. No. 694 at 1–2, 18.) Danaher and Atlas Copco seek leave to appeal this holding, arguing that it "is contrary to New York law" insofar as Danaher and Atlas Copco stand in the shoes of the insured, Chicago Pneumatic, and there is no "obligation of an insured to contribute to its own defense for long-tail claims." (Dkt. No. 683 at 4.)

Although New York courts have yet to recognize the precise obligation that Danaher and Atlas Copco contest, the narrow question of whether insureds must in some circumstances contribute to insurers' defense costs for long-tail claims is not suitable for interlocutory appeal. Interlocutory appeal may be appropriate when, in the estimation of the Court, an order addresses an issue "as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). There must be more than "simple disagreement" on the issue. *Garber v. Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014). Rather, the Court looks for "conflicting authority on the issue" and considers whether "the issue is particularly difficult and of first impression for the Second Circuit." *Id.* (citing *Florio v. New York*, No. 06-cv-6473, 2008 WL

3068247, at *1 (S.D.N.Y. Aug. 5, 2008)).  Danaher and Atlas Copco have not marshaled any authority undercutting the Court's analysis in the Opinion and Order, nor have they shown that the narrow question at hand is unusually challenging.

Danaher and Atlas Copco identify *Continental Casualty Co. v. Rapid-American Co.* as the relevant "controlling decision" and suggest that it contravenes the Court's holding (Dkt. No. 683 at 4) because it states that insurers "may later obtain contribution [for defense costs] from other applicable *policies*."  80 N.Y.2d 640, 655–56 (1993) (emphasis added).  But Danaher and Atlas Copco's highlighted language does not foreclose the possibility that insureds may too have an obligation to contribute to an insurer's defense costs.  *Rapid-American* expressly contemplates and holds open this possibility — that insurers may seek contribution for claims arising in periods during which an insured procured no applicable insurance and thus knew it was responsible for mounting its own defense.  *Id*. at 656; *see also Keyspan Gas E. Corp. v. Munich Reins. Am., Inc.*, 31 N.Y.3d 51, 61 (2018) (declining to "effectively provide insurance coverage to policyholders for years in which no premiums were paid" in part because "the average insured … would not expect to receive coverage without regard to the number of years for which it purchased applicable insurance").

In the wake of *Rapid-American*, courts have allowed insurers to seek contribution from insureds when the insurer had to defend against claims regarding "occurrences which took place outside [any insurer's] policy period" and when "defense costs can be readily apportioned." *Generali-U.S. Branch v. Caribe Realty Corp.*, No. 25499/91, 1994 WL 903279, at *2 (Sup. Ct. N.Y. Cnty. 1994); *see also Columbus McKinnon Corp. v. Travelers Indemnity Co.*, 367 F. Supp. 3d 123, 142 (S.D.N.Y. 2018) ("[T]he insured should pay for non-covered [claims].").  Danaher and Atlas Copco dismiss these cases as inapposite because the exposures to asbestos in the

Underlying Claims, which Danaher and Atlas Copco fashion as the only pertinent "occurrences," took place during Travelers's policy period. (Dkt. No. 683 at 9.) Danaher and Atlas Copco's definition of an "occurrence," however, stems from their misreading of *Appalachian Insurance Co. v. General Electric Co.*, a case that stands for nothing more than the proposition that "numerous [asbestos] exposure incidents," alleged by various claimants against a single defendant, can constitute multiple occurrences rather than one occurrence. 8 N.Y.3d 162, 174 (2007). Nowhere does *Appalachian Insurance* adopt Danaher and Atlas Copco's crabbed definition of an "occurrence" in the asbestos or long-tail claim context. To the contrary, *Stonewall Insurance Co. v. Asbestos Claims Management Corp.* instructs that an "occurrence of an [asbestos-related] injury-in-fact during the policy period" arises not only at the time of exposure but also when "competent evidence [shows] that subsequent injuries are occurring." 73 F.3d 1178, 1194–95 (2d Cir. 1995). To the extent that the Underlying Claims regard subsequent injuries that occurred outside Travelers's policy period, affixing liability for contribution from Danaher and Atlas Copco is consistent with previous case law.[2]

Furthermore, Danaher and Atlas Copco do not dispute that they have an obligation to contribute to Travelers's indemnification costs for the years in which Chicago Pneumatic was

---

[2] Danaher and Atlas Copco imply, but do not outwardly assert, that *Fulton Boiler Works v. American Motorists Insurance Co.* conflicts with the Opinion and Order. No. 5:06-cv-1117, 2010 WL 1257943 (N.D.N.Y. Mar. 25, 2010). In a parenthetical, Danaher and Atlas Copco characterize the case as "denying insurers' claim for contribution" because insurers "'have failed to . . . adduc[e] at least some admissible record evidence . . . that the underlying lawsuits involve 'occurrences' ***solely*** during self-insured periods.'" (Dkt. No. 683 at 10 (emphasis in original) (quoting *id*. at *7.)) The quoted paragraph, however, assessed whether the insured was entitled to a complete defense, given the claims against it. *Fulton Boiler Works*, 2010 WL 1257943, at *7. The paragraph did not establish that insureds' responsibility for contribution is triggered only when an occurrence arises "solely" during a period of self-insurance. Instead, with respect to contribution, the standard stated by the court was whether "evidence in a particular case establishes that the 'alleged occurrence' occurred, in full *or in part*, during an uninsured period." *Id*. (emphasis added.)

4

uninsured or its insurers have become insolvent.  *See Keyspan Gas E. Corp.*, 31 N.Y.3d at 60 (holding that insureds are "on the risk for periods of non-coverage").  Because apportioning "defense costs to follow the method for appointionment of indemnification costs" often is "workable and equitable," *Avondale Industries, Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1437 (S.D.N.Y. 1991); *see also Travelers Cas. & Sur. Co. v. Alfa Laval Inc.*, 100 A.D.3d 451, 452 (1st Dep't 2012) (proposing same apportionment method for both indemnification costs and defense costs); *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, 828 F. Supp. 2d 481, 498–99 (N.D.N.Y. 2011) (ordering same apportionment method for both indemnification costs and defense costs), the Court in its Opinion and Order aligned Danaher and Atlas Copco's liability for contribution for these two costs.  (Dkt. No. 694 at 18, 20.)

Danaher and Atlas Copco identify no real conflicts between previous interpretations of New York law and the Opinion and Order; they fail to persuade the Court that there exists substantial ground for difference of opinion on this issue.  Interlocutory appeal on Danaher and Atlas Copco's liability for contribution is not warranted.

**II.     NR's Motion for Reconsideration, Leave to Appeal, and Clarification**

The Opinion and Order also affixed liability on NR for a share of Travelers' defense costs, the precise amount to be determined at a later proceeding.  (Dkt. No. 694 at 22, 56.)  The Court based this holding on NR's duty to defend against the Underlying Claims, established by the excess policy NR issued to Chicago Pneumatic.  (*Id.*; Dkt. No. 575-2 at 4.)  In its motion, NR insists that it "does not have a duty to defend" and asks the Court to reconsider its holding or certify the issue for interlocutory appeal.  (Dkt. No. 687 at 1, 4.)

A motion for reconsideration is "properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice."  *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F.

5

Supp. 2d 678, 696 (S.D.N.Y. 2011) (internal citation omitted).  Here, NR seeks reconsideration on the basis that the Court's analysis in the Opinion and Order was clearly erroneous.  (Dkt. No. 707 at 1.)  It is not, however, the Court's analysis in the Opinion and Order that was erroneous but rather NR's reading of the Opinion and Order.

NR's motion is predicated on the understanding that the Court identified NR's duty to defend based exclusively on Section III of its excess policy, entitled "DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS."  (Dkt. No. 575-2 at 4.)  NR correctly assesses that this Section, standing on its own, does not create a duty to defend against claims arising from occurrences covered by Chicago Pneumatic's primary insurer.  NR incorrectly assumes, contrary to the plain text of the Opinion and Order, that the Court assessed Section III standing on its own — instead of in conjunction with the excess policy's provision entitled "EXHAUSTION OF AGGREGATE ENDORSEMENT."  (Dkt. No. 575-2 at 7.)  Indeed, NR argues that "the Court did not refer to the Exhaustion of Aggregate Endorsement in holding that North River had a duty to defend."  (Dkt. No. 707 at 2.)  But the Court quoted and cited the exhaustion provision immediately before quoting and citing Section III.  (Dkt. No. 694 at 22.)  The Court concluded that NR has a duty to defend based on these "plain and unambiguous terms," read together.  (*Id*.)  This combined reading is precisely what the court did in *E.R. Squibb & Sons v. Accident and Casualty Insurance Co.*, No. 82-cv-7327, 1992 WL 133899, at *8 (S.D.N.Y. Apr. 21, 1992) (reading the "legal defense provisions" in an insurer's policies alongside other provisions that "state that under certain circumstances the policies, although normally intended as excess policies, will function as underlying insurance"), a case to which the Court cited and analogized in the Opinion and Order.  (*See, e.g.*, Dkt. No. 694 at 50 (likening the NR policies to "those from *E.R. Squibb*").)  None of the cases cited by NR rebuts the analysis in

6

*E.R. Squibb* or otherwise suggests that it would be improper to understand Section III in light of the exhaustion provision.

The exhaustion provision states that, "in the event of . . . exhaustion of the aggregate limit" of Chicago Pneumatic's primary insurance, "such insurance as is afforded by [NR's excess] policy . . . shall apply as underlying insurance, notwithstanding anything to the contrary in the terms and conditions of this policy." (Dkt. No. 575-2 at 7.) Pursuant to Section III, the insurance afforded by NR's excess policy includes the provision of a defense for "any suit against the Insured seeking damages on account of personal injuries," like the Underlying Claims. (Dkt. No. 575-2 at 4.) That Section III, taken in isolation, applies only when an occurrence is "not covered by the underlying policies . . . but [is] covered by [NR's excess] policy" is of no occasion when the exhaustion provision is triggered. (*Id.*) When the primary insurance has been exhausted, NR's insurance applies as underlying insurance, just as it would if the occurrence at issue were not covered by the underlying policies yet covered by NR's excess policy. This is what implicates the duty to defend in Section III.

In failing to acknowledge, let alone engage, this reasoning, NR fails to show that the Court clearly erred. NR also falls short of establishing the "substantial ground for difference of opinion" required for interlocutory appeal. 28 U.S.C. § 1292(b).

In addition to moving for reconsideration and leave to appeal, NR moves for clarification of the Opinion and Order. Specifically, NR "seeks clarification that the starting point of [a supplemental allocation] proceeding must include a reconsideration of Travelers' previously paid indemnity and defense costs and an adjustment of the available Travelers primary limits to the extent Travelers is entitled to contribution from other parties." (Dkt. No. 687 at 12–13.)

NR's requested clarification is unnecessary.  The Opinion and Order unambiguously states that any supplemental allocation proceeding will reconsider indemnification or defense costs that "Travelers *has expended* or will expend" with respect to the Underlying Claims.  (Dkt. No. 694 at 18 (emphasis added).)  Because Travelers' policies "for the successive annual policy periods of April 1, 1979 to April 1, 1985, [were] exhausted by the resolution of historical product liability claims tendered to Travelers by Chicago Pneumatic before most, if not all, of the Underlying Claims were filed" (Dkt. No. 513 ¶ 8.), contribution from Danaher, Atlas Copco, and Chicago Pneumatic's excess insurers will not require an adjustment of Traveler's limits with respect to its exhausted policies for 1979–82.  NR's motion for clarification, like its motion for reconsideration or leave to appeal, is denied.

### III.   Danaher's Motion to Substitute Party

The third and final pending motion is Danaher's motion to substitute itself with Fortive Corporation ("Fortive"), Danaher's supposed successor in interest with respect to the Underlying Claims.  "Substitution of a successor in interest . . . under Rule 25(c) [of the Federal Rules of Civil Procedure] is generally within the sound discretion of the trial court."  *Organic Cow, LLC v. Ctr. for New England Dairy Compact Research*, 335 F.3d 66, 71 (2d Cir. 2003) (internal quotation marks and citation omitted).  Still, a district court can abuse its broad discretion "by allowing substitution in the absence of . . . proof of [a] transfer or assignment of a tangible interest" from the movant to its proposed substitute.  *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996).  Here, the Court finds sufficient evidence that Fortive now holds the rights and obligations at issue in this case.

On July 1, 2016, Danaher and its wholly owned subsidiary, Fortive, separated into two publicly traded companies, each with its own share of and control over the businesses previously consolidated under Danaher.  (*See* Dkt. No. 660-1.)  The agreement under which Danaher and

Fortive separated specifies that the "Fortive Assets" include "[a]ll rights" held by Danaher pertaining to Chicago Pneumatic. (Dkt. No. 660-1 sched. 1.1(71)(ii); Dkt. No. 660-2.) The agreement further specifies that the "Fortive Liabilities" include "[a]ll obligations under . . . the applicable sale and related agreements pertaining to the diversitures" of "Fortive Former Business[es]," including Chicago Pneumatic. (Dkt. No. 660-1 sched. 1.1(84)(ii); Dkt. No. 660-4; Dkt. No. 660-3.) "[F]or the avoidance of doubt," the agreement separately defines "any Liabilities relating to, arising out of or resulting from" "Actions Transferred to Fortive," including "[a]ny matter asserting asbestos-related personal injury claims" against Chicago Pneumatic, as "Fortive Liabilities." (Dkt. No. 660-1 sched. 1.1(84)(vii); Dkt. No. 660-5.) The agreement also provides that Fortive "shall . . . idemnify, defend and hold harmless" Danaher for "any Liabilities of the Danaher Group under" certain agreements, including the Stock Purchase Agreement ("SPA") that transferred ownership of Chicago Pneumatic and under which Danaher's obligations to indemnify and defend arise. (Dkt. No. 660-1 sched. 6.3; Dkt. No. 660-6.)[3]

Parts of the agreement suggest that all of Danaher's rights and obligations with respect to the Underlying Claims have been transferred to Fortive. But, as Travelers points out in its opposition to Danaher's motion, other parts of the agreement undermine that suggestion. Although the agreement expressly states that Fortive is responsible for all liabilities arising from asbestos-related claims against Chicago Pneumatic, the agreement is "silent on . . . the issue of silica-related bodily injury claims," which make up a portion of the Underlying Claims. (Dkt. No. 669 at 6.) Furthermore, the agreement contemplates the possibility that the "Danaher

---

[3] Contrary to Certain Insurers' contentions in opposing Danaher's motion (*see generally* Dkt. No. 690), the agreement does not purport to assign Chicago Pneumatic's insurance policies to Fortive. Certain Insurers' effort to cast the agreement as a defective assignment is unpersuasive.

9

Group" — defined in the agreement as Danaher *after* its separation from Fortive (Dkt. No. 660-1 sched. 1.1(32)) — will have liabilities under the SPA. (Dkt. No. 660-1 sched. 6.3; Dkt. No. 660-6.) In other words, the agreement contemplates the possibility of an incomplete transfer of Danaher's obligations under the SPA.

Perhaps recognizing that the agreement is ambiguous as to whether Danaher's rights and obligations have been transferred in full, Danaher has submitted an affidavit from a former Danaher employee and current Senior Litigation Counsel for Fortive with "firsthand knowledge" of the agreement. (Dkt. No. 701 ¶¶ 2–5.) The affidavit explains that the agreement "transferred to Fortive all of Danaher's rights and liabilities regarding Chicago Pneumatic, the underlying asbestos and silica bodily injury claims, and the [SPA]." (Dkt. No. 701 ¶ 7.) It provides that "Fortive recognizes its responsibility for all of Danaher's former rights and obligations in connection with Chicago Pneumatic," "has stepped fully into Danaher's shoes with respect to the 1987 SPA," and "consents to its substitution" for Danaher in this litigation. (Dkt. No. 701 ¶¶ 12–13, 15.) The affidavit paints a clear picture of what the agreement did and who the party in interest now is: Fortive.

Fortive has the financial wherewithal to litigate this case. (*See generally* Dkt. No. 701-1.) Moreover, current Fortive personnel, who joined Fortive when the two companies separated, include former Danaher personnel who have worked on and are familiar with this particular case. (Dkt. No. 701 ¶ 4.) Substituting Danaher with Fortive would neither frustrate other parties' efforts to obtain relief nor delay and complicate this litigation. *Cf Advanced Marketing Grp., Inc. v. Business Payment Systems, LLC*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010) (denying a motion to substitute when the substitution "would serve only to add duration, costs, and complexity").

Danaher's motion to substitute is granted, and the caption of this case will be amended accordingly.

## IV. Conclusion

For the foregoing reasons, Danaher and Atlas Copco's motion to for leave to appeal is DENIED; NR's motions for reconsideration, leave to appeal, and clarification are DENIED; and Danaher's motion to substitute party is GRANTED. Counsel for Fortive shall appear on or before November 30, 2020. All parties, with Fortive in place of Danaher, are directed to meet and confer regarding further proceedings. On or before December 11, 2020, the parties shall submit a joint status letter addressing proposals for such proceedings, including the earlier proposal that this matter be referred for supplemetal allocation proceedings. (Dkt. No. 522 at 24; Dkt. No. 618 at 16.)

Danaher Corporation is hereby replaced by Fortive Corporation as a party in this action, and the case caption shall be amended accordingly.

The Clerk of Court is directed to close the motions at Docket Numbers 658, 672, 673, 674, 682, 686, 692, and 695.

SO ORDERED.

Dated: November 16, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge